UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                          )
                                                )
WAYNE L. STUTTS and                             )        CASE NO. 11-11728
JOYCE A. STUTTS,                                )
                                                )
                              Debtors.          )

## SECOND MODIFIED PLAN OF REORGANIZATION DATED AUGUST 31, 2012

TO:    Hon. William Stocks United States Bankruptcy Judge

Your Applicant, Wayne L. Stutts and Joyce A. Stutts, Debtors-in-Possession, respectfully proposes the following Second Modified Plan of Reorganization dated August 31, 2012, modifying the previous Plan of Reorganization dated May 31, 2012 and the Modified Plan of Reorganization Dated August 15, 2012.

## INTRODUCTION

Wayne L. Stutts and Joyce A. Stutts (hereinafter the "Stutts" or "Debtors" or "Debtors-in-Possession") have been acquiring real property for nearly 30 years. Mr. Stutts maintains licenses as a Real Estate Developer and as a Certified Surveyor. Over the previous 30 years, when as a surveyor Mr. Stutts would gain knowledge of available vacant real estate, the Debtors purchased certain parcels for development. Some of the developed properties were sold while others were maintained as rental units. As the rental business grew, the Debtors would acquire vacant real estate at discounted prices for future development. The Debtors also began purchasing preexisting rental units. Approximately two years ago the Debtors owned roughly 70 rental units, as well as 30 vacant unencumbered lots. Mrs. Stutts began having some medical issues and as a result the Debtors were unable to spend the time necessary to manage and maintain the properties, leading to an increased vacancy rate. Mrs. Stutts has subsequently made a full recovery. When the Debtors' vacancy rate increased, they no longer were able to afford payments on those properties that had secured debt obligations. Several foreclosure proceedings were initiated, and the Debtors lost approximately 20 rental units in various foreclosure proceedings. When the number of foreclosure proceedings increased, the Debtors sought relief under Chapter 11 of the Bankruptcy Code.

## SUMMARY

This Second Modified Plan of Reorganization (the "Plan" or the "Modified Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Wayne L. Stutts and Joyce A. Stutts (the "Debtors" or "Stutts") from cash flow, derived from future operations and the liquidation of certain properties. It is anticipated that cash flow from current and future operations will be insufficient to satisfy monthly installments of arrearages on secured claims, or bi-yearly payments on general unsecured claims, as outlined below. As a result the Debtors propose to make said payments from the liquidation of unencumbered assets of the Estate, as well as the liquidation of unencumbered assets of the Debtors' business Wayne L. Stutts Builders, Inc. The Plan provides for eleven (11) classes of priority claims; seven (7) classes of secured claims; and two (2) classes of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately twenty five (25) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles I through XIX of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## CHAPTER 11 OPERATIONS

During the Chapter 11 proceedings, the Debtors concentrated on reducing the number of non-performing rental units, cutting expenses, providing better recording periods, and decreasing their vacancy rate. The Debtors, with Court permission, have entered into two (2) short sale agreements, abandoned three (3) non-performing rental units, and decreased their vacancy rate significantly, leaving the Debtors with forty nine (49) rental units and thirty (30) vacant lots. Currently the Debtors' vacancy rate is eight percent (8%). As such the Debtors have reduced their overhead and concentrated on improving the rental income received from real estate. Additionally, the Debtors have taken steps to institute financial controls.

While rental prices have not increased significantly due to the general state of the economy, the budget proposed by the Debtors and the reduction of their non-performing assets have been successful, such that based on the financial improvements shown by the Debtors, and the expected future improvements, the Debtors are in a position to set forth the proposed Second Modified Plan of Reorganization dated August 31, 2012, modifying the previous Plan of Reorganization dated May 31, 2012 and the Modified Plan of Reorganization Dated August 15, 2012.

## TERMS AND DEFINITIONS

For purposes of this Disclosure Statement and accompanying Plan, the following definitions shall apply and, unless otherwise indicated, the singular shall include the plural:

**Allowed Claim**: Any Claim against the Debtors for which a Proof of Claim was filed on or before the date designated for such filing by the United States Bankruptcy Court as of the last day on which to file Claims in this proceeding, or which is listed in the Schedules filed by the Debtors (unless listed as unliquidated, disputed, or contingent) and, in either case, to which no objection has been filed within the applicable period of limitation fixed by the United States Code, the Rules of Bankruptcy Procedure, or Order of this Court, unless the objection has been determined by Final Order or Judgment of the Court, or any applicable court, allowing such Claim. This definition shall include allowed secured claims and, to the extent authorized under the Code and approved by the Court, an allowed secured claim shall include 11 U.S.C. § 506(b) expenses.

**Bankruptcy Code**: Provisions of Title 11, United States Code, as amended by the Bankruptcy Reform Act of 1978, and as may be hereinafter amended from time to time.

**Cash**: Cash, cash equivalent, or other available market securities or instruments.

**Collateral**: Property of the Debtors which have been pledged to a creditor to secure an indebtedness.

**Claim**: A duly scheduled Allowed Claim or timely allowed filed Proof of Claim, or any Debtor obligation which would be an allowed administrative expense claim under 11 U.S.C.§ 503 or 11 U.S.C. § 507.

**Confirmation of the Plan**: The entry by this Court of an Order confirming the Plan in accordance with Title 11, Chapter 11, of the United States Bankruptcy Code.

**Consummation of the Plan**: The consummation of all things contained in or provided for in this Plan, and the entry of an Order of Consummation of Final Decree finally dismissing this Reorganization case.

**Court**: The United States Bankruptcy Court for the Middle District of North Carolina, Greensboro Division.

**Debtor**: The Debtors in this proceeding are Wayne L. and Joyce A. Stutts.

**Effective Date of the Plan**: Sixty (60) days after entry of an Order confirming this Chapter 11 Plan.

**Estate**: The property belonging to the Debtors on the date this case was commenced and as defined by §§ 541 and 1115 of the Bankruptcy Code and other applicable law.

3

**Lien**:  A mortgage, judgment lien, materialmen's lien, statutory lien, security interest, charging order, or other charge or encumbrance on the Debtors' property, effective under applicable laws as of the date of Debtors' petition for reorganization or thereafter as authorized by Order of the Bankruptcy Court.

**Notice and Hearing**:  Notice and Hearing as defined by § 102(1) of the United States Bankruptcy Code.

**Plan**:  This Plan of Reorganization dated May 31, 2012, as modified on August 15, 2012, and as modified on August 31, 2012 and any modification thereof as approved by the Court.

**Pro Rata**:  The proportion that each Allowed Claim in a particular class of creditors bears to the aggregate of all Allowed Claims in that class on that date.

**Reorganized Debtor**:  Wayne L. and Joyce A. Stutts, after entry of an Order confirming this Chapter 11 Plan and as revested with properties that were formerly property of the Estate as provided in § 1141(b) of the United States Bankruptcy Code.

**Secured Claim**:  An Allowed Claim under 11 U.S.C. § 506(a) by identified Collateral, properly perfected, and not avoidable under applicable law.

**Substantial Consummation**:  The date at which the Debtors have commenced the distribution of initial Plan payments, has issued promissory Notes as required under the Plan, completed all procedures necessary to obtain Bankruptcy Court approval of any disposition of the Debtors' Estate as described herein and closed on the sale of any of the Debtors' real and personal property.

**Unsecured Trade Claim**:  An allowed trade claim that arose or accrued prior to November 11, 2011 that is unsecured and is not entitled to priority under § 507 of the United States Bankruptcy Code.

**Unsecured Creditor**:  A creditor with an Allowed Claim that arose or accrued prior to November 11. 2011, which is unsecured and is not entitled to priority under § 507(1) of the United States Bankruptcy Code.

## ARTICLE I
## CLASSIFICATION AND TREATMENT OF CLAIMS

1.1a    Class I - Administrative Claims

1.1b    Description:  All administrative expenses, fees and allowances of compensation as determined by the Bankruptcy Court, exclusive of the Claims provided for in Class II, shall

constitute Class I. It is not anticipated that there will be any Allowed Class I Administrative Expense Claims.

     1.1c   Treatment:  The claims of Class I shall be paid in cash, in full, from available cash generated from the continued operation of the Debtors' business, on the Effective Date of the Plan or at such later date as agreed upon by all parties concerned.

     1.1d   Impairment:   This Class is not impaired.

     1.2a   Class II - Administrative Operating Expenses

     1.2b   Description:  All expenses incurred by the Debtors in the operation of its business under Chapter 11, except as otherwise provided for in this Plan, shall constitute Class II. It is not anticipated that there will be any Allowed Class II Administrative Operating Expense Claims.

     1.2c   Treatment:  All unpaid post-petition Class II expenses and contracts not heretofore or herein rejected by the Debtors shall be assumed by the Reorganized Debtors in accordance with the terms and conditions of said contracts and shall be paid in the continued ordinary course of the Reorganized Debtors' business.

     1.2d   Impairment: This Class is not impaired.

     1.3a   Class III - Tax Claims of the Internal Revenue Service Having Priority Under §507(a)(8) of the Bankruptcy Code

     1.3b   Description:  This Class consists of all prepetition priority taxes owed to the Internal Revenue Service as of the date of filing by the Debtors. It is not anticipated that there will be any Allowed Class III Tax Claims.

     1.3c   Treatment:  Class III claims shall be paid in quarterly installments over a maximum period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate prevailing on the Effective Date of the Plan. The first quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full month following confirmation of this Second Modified Plan of Reorganization. The Debtors reserve the right to prepay said claims in the event funds are available for this purpose prior to payments becoming due.

     1.3d   Impairment: This Class is impaired.

     1.4a   Class IV - Tax Claims of the North Carolina Department of Revenue Having Priority Under § 507(a)(8) of the Bankruptcy Code

     1.4b   Description:  This Class consists of all prepetition priority taxes owed to the North Carolina Department of Revenue as of the date of filing by the Debtors. It is not anticipated that there will be any Allowed Class IV Tax Claims.

5

1.4c   <u>Treatment</u>: Class IV claims shall be paid in equal monthly installments over a period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate of interest prevailing at the Effective Date of the Plan. As of the date of the filing of the Plan, the current legal rate of interest was set at five percent (5%). The Debtors reserve the right to prepay said Claims in the event the funds are available for this purpose prior to payments becoming due.

1.4d   <u>Impairment</u>: This Class is impaired.

1.5a   <u>Class V - Tax Claims of the Employment Security Commission Having Priority Under § 507(a)(8) of the Bankruptcy Code</u>

1.5b   <u>Description</u>: This Class consists of all prepetition priority taxes owed to the Employment Security Commission as of the date of filing by the Debtors. It is not anticipated that there will be any Allowed Class V Tax Claims.

1.5c   <u>Treatment</u>: Each Claim of Class V shall be paid in equal monthly installments over a period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate of interest prevailing at the Effective Date of the Plan. As of the date of the filing of the Second Modified Plan, the current legal rate of interest was set at three percent (3%). The Debtors reserve the right to prepay said Claims in the event the funds are available for this purpose prior to payments becoming due.

1.5d   <u>Impairment</u>: This Class is impaired

1.6a   <u>Class VI - Tax Claims of Guilford County Having Priority Under § 507(a)(8) of the Bankruptcy Code</u>

1.6b   <u>Description</u>: This Class consists of all prepetition priority taxes owed to Guilford County, North Carolina as of the date of filing by the Debtors. It is anticipated that there will be forty-thousand, two hundred seventy eight dollars and fifty six cents ($40,278.56) of Allowed Class VI Tax Claims.

1.6c   <u>Treatment</u>: The Class VI claims shall be paid in quarterly installments over a maximum period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate prevailing of ten and three tenths percent (10.3%) on the Effective Date of the Plan. Guilford County shall maintain its current secured position on the same collateral it currently holds as security and with the same priority unless otherwise provided in this Plan. The first (1st) quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full month following confirmation of this Second Modified Plan of Reorganization. The Debtors reserve the right to prepay said claims in the event funds are available for this purpose prior to payments becoming due.

1.6d   <u>Impairment</u>: This Class is impaired.

1.7a    Class VII - Tax Claims of Randolph County Having Priority Under
§ 507(a)(8) of the Bankruptcy Code

1.7b    Description: This Class consists of all prepetition priority taxes owed to
Randolph County, North Carolina as of the date of filing by the Debtors. It is anticipated that
there will be nine hundred and forty eight dollars ($948.00) worth of Allowed Class VII Tax
Claims.

1.7c    Treatment: The Class VII claims shall be paid in quarterly installments over a
maximum period of sixty (60) months following the Effective Date of the Plan, with interest at
the legal rate prevailing of ten and three tenths percent (10.3%) on the Effective Date of the Plan.
Randolph County shall maintain its current secured position on the same collateral it currently
holds as security and with the same priority unless otherwise provided in this Plan. The first (1st)
quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full
month following confirmation of this Second Modified Plan of Reorganization. The Debtors
reserve the right to prepay said claims in the event funds are available for this purpose prior to
payments becoming due.

1.7d    Impairment: This Class is impaired.

1.8a    Class VIII - Tax Claims of Rockingham County Having Priority Under
§ 507(a)(8) of the Bankruptcy Code

1.8b    Description: This Class consists of all prepetition priority taxes owed to
Rockingham County, North Carolina as of the date of filing by the Debtors. It is anticipated that
there will be one thousand, eight hundred forty nine dollars and thirty seven cents ($1,849.37) of
Allowed Class VIII Tax Claims.

1.8c    Treatment: The Class VIII claims shall be paid in quarterly installments over a
maximum period of sixty (60) months following the Effective Date of the Plan, with interest at
the legal rate prevailing of nine percent (9.0%) on the Effective Date of the Plan. Rockingham
County shall maintain its current secured position on the same collateral it currently holds as
security and with the same priority unless otherwise provided in this Plan. The first (1st)
quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full
month following confirmation of this Second Modified Plan of Reorganization. The Debtors
reserve the right to prepay said claims in the event funds are available for this purpose prior to
payments becoming due.

1.8d    Impairment: This Class is impaired.

1.9a    Class IX - Tax Claims of Brunswick County Having Priority Under
§ 507(a)(8) of the Bankruptcy Code

7

1.9b    Description: This Class consists of all prepetition priority taxes owed to Brunswick County, North Carolina as of the date of filing by the Debtors. It is anticipated that there will be six thousand, one hundred eighty two dollars and ninety eight cents ($6,182.98) of Allowed Class IX Tax Claims.

1.9c    Treatment: The Class IX claims shall be paid in quarterly installments over a maximum period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate prevailing of nine percent (9.0%) on the Effective Date of the Plan. Brunswick County shall maintain its current secured position on the same collateral it currently holds as security and with the same priority unless otherwise provided in this Plan. The first (1st) quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full month following confirmation of this Second Modified Plan of Reorganization. The Debtors reserve the right to prepay said claims in the event funds are available for this purpose prior to payments becoming due.

1.9d    Impairment: This Class is impaired.

1.10a   Class X - Claims of the City of Greensboro Having Priority Under § 507(a)(8) of the Bankruptcy Code

1.10b   Description: This Class consists of all prepetition priority debts owed to the City of Greensboro, North Carolina as of the date of filing by the Debtors. It is anticipated that there will be one thousand, three hundred and eighty six dollars ($1,386.00) of Allowed Class X Claims.

1.10c   Treatment: The Class X claims shall be paid in quarterly installments over a maximum period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate prevailing of five percent (5.0%) on the Effective Date of the Plan. The City of Greensboro shall maintain its current secured position on the same collateral it currently holds as security and with the same priority unless otherwise provided in this Plan. The first (1st) quarterly installment shall be made on or before the twentieth (20th) day of the first (1st) full month following confirmation of this Second Modified Plan of Reorganization. The Debtors reserve the right to prepay said claims in the event funds are available for this purpose prior to payments becoming due.

1.10d   Impairment: This Class is impaired.

1.11a   Class XI - Tax Claims Having Priority Under § 507(a)(8) of the Bankruptcy Code

1.11b   Description: This Class consists of all taxes, excepting those set forth in Class III thru Class X owed as of the date of filing by the Debtors. It is not anticipated that there will be any Allowed Class XI Tax Claims.

1.11c  Treatment:  Each Claim of Class XI shall be paid in equal monthly installments over a period of sixty (60) months following the Effective Date of the Plan, with interest at the legal rate of interest prevailing at the Effective Date of the Plan. As of the date of the filing of the Plan, the current legal rate of interest was set at three percent (3.0%). The Debtors reserve the right to prepay said Claims in the event the funds are available for this purpose prior to payments becoming due.

1.11d  Impairment:  This Class is impaired.

## SECURED CLAIMS

### 1.12a  Class XII -Secured Claim of MidCarolina Bank

1.12b  Description:   MidCarolina Bank has a Secured Claim pursuant to a note entered into on or about August 6, 2008 in the original amount of three hundred and six thousand dollars ($306,000.00). The Loan is evidenced by a Promissory Note and Deed of Trust dated August 6, 2008.  The Note is secured by the Debtors' Real Property at 1423 E. Washington Street, Greensboro, NC, 1312 Mayfair Ave, Greensboro, NC, 1310 Mayfair Ave, Greensboro, NC, 3544 Vernon Drive, Mcleansville, NC, 4696 Crossbend Road, Mcleansville, NC, 4694 Crossbend Road, Mcleansville, NC, 4710 Crossbend Road, Mcleansville NC, 4706 Crossbend Road, Mcleansville, NC, 4700 Crossbend Road, Mcleansville, NC, and 4702 Crossbend Road, Mcleansville, NC. The Note is also secured by the Debtors' Personal Property, also known as a 2006 Cadillac DTX. The Debtors entered into a Modification Agreement, made September 10, 2009. Pursuant to the terms of the August 6, 2008 Note and the September 10, 2009 Modification, the Note was to be paid at a rate of two thousand, three hundred eighty five dollars ($2,385.00) per month until August 10, 2013, at which time the balance of the Note of two hundred fifty eight thousand, eight hundred forty three dollars and seventy two cents ($258,843.72) was to be due in full. Interest was originally set at a rate of six point five percent (6.5%). It is anticipated that there will be an allowed Class XII claim in the prepetition amount of two hundred and ninety five thousand, five dollars ($295,005.00).

1.12c  Treatment:  The Allowed Secured Claim of MidCarolina Bank shall be paid in full. MidCarolina Bank shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority. The Class XII Secured Claim shall be treated as follows:

Upon information available to the Debtors, the Debtors' Collateral securing the Note has a fair market value of four hundred fifty five thousand, eight hundred twenty two dollars ($473,822.00) as a result the allowed claim of MidCarolina Bank shall be secured in full. The fair market value of the MidCarolina Bank collateral is based on a market value of eighty nine thousand, seven hundred dollars ($89,700.00) for the real property located at 1423 E. Washington, Greensboro, NC, seventy eight thousand, two hundred dollars ($78,200.00) for the real property located at 1312 Mayfair Avenue, Greensboro, NC, seventy eight thousand, eight hundred dollars ($78,800.00) for the real property located at 1310 Mayfair Avenue, Greensboro, NC, twenty seven thousand dollars ($27,000.00) for the real property located at 3544 Vernon

9

Drive, Greensboro, NC, twenty seven thousand dollars ($27,000.00) for the real property located at 4694 Crossbend Road, Greensboro, NC, twenty seven thousand dollars ($27,000.00) for the real property located at 4696 Crossbend Road, Greensboro, NC, thirty thousand dollars ($30,000.00) for the real property located at 4710 Crossbend Road, Greensboro, NC, twenty four thousand, six hundred dollars ($24,600.00) for the real property located at 4706 Crossbend Road, Greensboro, NC, twenty eight thousand, eight hundred dollars ($28,800.00) for the real property located at 4700 Crossbend Road, Greensboro, NC, twenty nine thousand, seven hundred dollars ($29,700.00) for the real property located at 4702 Crossbend Road, Greensboro, NC, six thousand dollars ($6,000.00) for the real property located at 3544 Rear Vernon Drive, Greensboro, NC, three thousand dollars ($3,000.00) for the real property located at 4696 Rear Crossbend Road, Greensboro, NC, three thousand dollars ($3,000.00) for the real property located at 4696 Rear Crossbend Road, Greensboro, NC, three thousand dollars ($3,000.00) for the real property located at 4700 Rear Crossbend Road, Greensboro, NC and eighteen thousand, twenty two dollars ($18,022.00) for the personal property.  To the extent MidCarolina Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of MidCarolina Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay MidCarolina Bank the balance due under the Note amortized over a period of three hundred and sixty (360) months at a three percent (3.0%) interest rate and payable in monthly installments until sixty (60) months following the Effective Date of the Plan at which time the balance under the note shall be due in full. The Debtors shall have eighteen (18) months in which to sell, by auction or by broker, the vacant lots (the lots located at 3544 Vernon Drive, Greensboro, NC, 4694 Crossbend Road, Greensboro, NC, 4696 Crossbend Road, Greensboro, NC, 4710 Crossbend Road, Greensboro, NC, 4706 Crossbend Road, Greensboro, NC, 4700 Crossbend Road, Greensboro, NC, 4702 Crossbend Road, Greensboro, NC, 3544 Rear Vernon Drive, Greensboro, NC, 4696 Rear Crossbend Road, Greensboro, NC, 4696 Rear Crossbend Road, Greensboro, NC, and 4700 Rear Crossbend Road, Greensboro, NC) (hereinafter the "MidCarolina Vacant Lots") which are secured by the MidCarolina Bank Note. All proceeds received from the sale, after normal and usual closing costs, of the MidCarolina Vacant Lots shall be used to pay down the indebtedness owed under the Note. In the event the Debtors are unable to sell, by auction or by broker, the MidCarolina Vacant Lots within eighteen (18) months following the Effective Date of the Plan, the MidCarolina Vacant Lots will be surrendered to American National Bank, as successor in interest to MidCarolina Bank. American National Bank shall liquidate the MidCarolina Vacant Lots, with the proceeds received from the liquidation, after normal and usual closing costs, being applied to pay down the indebtedness owed under the Note. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the effective date of the Plan.

1.12d   This Class is impaired.

1.13a   Class XIII -Secured Claim of Bank of America

10

    1.13b  <u>Description</u>:  Bank of America has a Secured Claim pursuant to a note entered into on or about December 20, 2005 in the original amount of sixty five thousand, six hundred dollars ($65,600.00). The Loan is evidenced by a Promissory Note and Deed of Trust dated December 20, 2005. The Note is secured by the Debtors' Real Property at 3814-A Central Avenue, Greensboro, NC. Pursuant to the terms of the December 20, 2005 Note , as of the date of the filing of the petition the indebtedness was to be paid at a rate of two hundred seventy four dollars and seventeen cents ($274.17) per month until January 1, 2046 at which time the balance of the Note was due and payable. Interest would accrue at a variable interest rate, which as of the date of the petition was four and one half percent (4.5%). It is anticipated that there will be an allowed Class XIII claim in the amount of fifty eight thousand, two hundred dollars and no cents ($58,200.00).

    1.13c  <u>Treatment</u>:  The Allowed Secured Claim of Bank of America shall be paid in full. Bank of America shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority. The Class XIII Secured Claim shall be treated as follows:

    Upon information available to the Debtors, the Debtors' Collateral securing the Note has a fair market value of fifty eight thousand, two hundred dollars ($58,200.00) as a result the allowed claim of Bank of America shall be secured in the amount of fifty eight thousand, two hundred dollars ($58,200.00). The fair market value of the Bank of America collateral is based on a market value of fifty eight thousand, two hundred dollars ($58,200.00) for the real property located at 3814-A Central Avenue, Greensboro, NC. The Debtors do not intend to bifurcate Bank of America's claim based on the December 20, 2005 Note, nor do the Debtors intend to "cram down" Bank of America's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Bank of America may assert, as described below. To the extent Bank of America objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Bank of America, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

    The Debtors shall pay Bank of America pursuant to the terms and conditions of the December 20, 2005 Note. It is estimated that the amount owed under the December 20, 2005 Note is fifty eight thousand, two hundred dollars ($58,200.00). Interest shall accrue at a variable interest rate, which as of the date of the petition was four and one half percent (4.5%). Bank of America shall file a proof of claim within sixty (60) days following the Effective Date of the Plan setting forth the arrearages owed under the Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said proof of claim. If any arrearages are owed under the Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of four percent (4.0%). In the event Bank of America fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Bank of America will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the

first (1ˢᵗ) full month following the effective date of the Plan.

    1.13d   This Class is impaired.

    1.14a   <u>Class XIV -Secured Claims of JPMorgan Chase</u>

    1.14b   <u>Description</u>:  JPMorgan Chase has two Secured Claims, described as follows:

    1.14b.i     JPMorgan Chase has a Secured Claim pursuant to a note entered into on or about June 30, 2004 in the original amount of eighty eight thousand dollars and no cents ($88,000.00) which is evidenced by a Promissory Note and Deed of Trust dated June 30, 2004 (hereinafter the "June 30 Note"). The June 30 Note is secured by the Debtors' Real Property at 627 Danbury Bridge, Madison, NC. Pursuant to the terms of the June 30 Note, the indebtedness was to be paid at a rate of four hundred ninety dollars and fifty cents ($490.50) per month until August 1, 2011 at which time the indebtedness was to be paid at a rate of four hundred sixty seven dollars and eleven cents ($467.11) per month until December 1, 2011 at which time the indebtedness was to be paid at a rate of five hundred thirty four dollars and fifty six cents ($534.56) per month until July 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of three point two six eight percent (3.268%). It is anticipated that there will be an allowed Class XIV claim in the prepetition amount of ninety eight thousand, eight hundred fifty three dollars and seventy nine cents ($98,853.79) including nine thousand, five hundred thirteen dollars and ninety nine cents ($9,513.99) in arrears.

    1.14b.ii     JPMorgan Chase has a Secured Claim pursuant to a note entered on or about June 29, 2004 in the original amount of one hundred five thousand, six hundred dollars and no cents ($105,600.00) which is evidenced by a Promissory Note and Deed of Trust dated June 29, 2004 (hereinafter the "June 29 Note"). The June 29 Note is secured by the Debtors' Real Property at 711 A & B Rollins Street, Greensboro, NC. Pursuant to the terms of the June 29 Note, the indebtedness was to be paid at a rate of six hundred thirty five dollars and fifty nine cents ($635.59) per month until December 1, 2011 at which time the indebtedness was to be paid at a rate of seven hundred seventy five dollars and sixty seven cents ($775.67) until July 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of five percent (5.0%). It is anticipated that there will be an allowed Class XIV claim in the prepetition amount of ninety thousand, five hundred thirty eight dollars and ninety one cents ($90,538.91) including eleven thousand, eight hundred eighty six dollars and seventy four cents ($11,886.74) in arrears.

    1.14c   <u>Treatment</u>:  The Allowed Secured Claim of JPMorgan Chase shall be paid in full. JPMorgan Chase shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority. The Class XIV Secured Claim shall be treated as follows:

    1.14c.i     Upon information available to the Debtors, the Debtors' Collateral securing the June 30 Note has a fair market value of one hundred four thousand, six hundred and fifty six dollars ($104,656.00) as a result of the allowed claim of JPMorgan Chase for the June

30 Note will be secured in full. The fair market value of the JPMorgan Chase collateral is based on a market value of one hundred four thousand, six hundred and fifty six dollars ($104,656.00) for the real property located at 627 Danbury Bridge Road, Madison, NC. To the extent JPMorgan Chase objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of JPMorgan Chase, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay JPMorgan Chase pursuant to the terms and conditions of the June 30 Note. JPMorgan Chase shall file a proof of claim within sixty (60) days following the Effective Date of the Plan setting forth the arrearages owed under the June 30 Note, if any, at which time the Debtors shall have thirty (30) days with which to object to said proof of claim. If any arrearages are owed under the June 30 Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three point two six eight percent (3.268%). In the event JPMorgan Chase fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, JPMorgan Chase will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the effective date of the Plan.

1.14c.ii        Upon information available to the Debtors, the Debtors' Collateral securing the June 29 Note has a fair market value of one hundred twenty thousand dollars ($120,000.00) as a result the allowed claim of JPMorgan Chase for the June 30 Note will be secured in full. The fair market value of the JPMorgan Chase collateral is based on a market value of one hundred twenty thousand dollars ($120,000.00) for the real property located at 711 A & B Rollins Street, Greensboro, NC. To the extent JPMorgan Chase objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of JPMorgan Chase, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to JPMorgan Chase.  The Debtors shall repay the balance due under the June 29 Note amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, such interest rate estimated at five and one quarter percent (5.25%).  Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the effective date of the Plan.

1.14d   This Class is impaired.

1.15a   Class XV -Secured Claim of Bank of Oak Ridge

13

1.15b  <u>Description</u>:   Bank of Oak Ridge has a Secured Claim pursuant to a note entered into on or about December 22, 2010 in the original amount of one hundred and thirty five thousand dollars ($135,000.00). The Loan is evidenced by a Commercial Promissory Note and Deed of Trust dated December 22, 2010. The Note is secured by the Debtors' Real Property at 5148 Randleman Road, Greensboro, NC. Pursuant to the terms of the Commercial Promissory Note and the Deed of Trust the Note was to be paid at a rate of one thousand, sixty seven dollars and one cent ($1,067.01) per month until December 22, 2015, at which time the remaining balance of the note would be due in full. Interest would accrue at a rate of seven and one quarter percent (7.25%). It is anticipated that there will be an allowed Class XV claim in the prepetition amount of one hundred thirty four thousand, one hundred and twenty dollars and fifty one cents ($134,120.51) including one thousand, five hundred twenty eight dollars and two cents ($1,528.02) in arrears.

1.15c  <u>Treatment</u>:  The Allowed Secured Claim of Bank of Oak Ridge shall be paid in full. Bank of Oak Ridge shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority. The Class XV Secured Claim shall be treated as follows:

Upon information available to the Debtors, the Debtors' Collateral securing the Note has a fair market value of one hundred ninety five thousand, four hundred dollars ($195,400.00) as a result the allowed claim of Bank of Oak Ridge shall be secured in full. The fair market value of the Bank of Oak Ridge collateral is based on a market value of one hundred ninety five thousand, four hundred dollars ($195,400.00) for the real property located at 5148 Randleman Road, Greensboro, NC. To the extent Bank of Oak Ridge objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Bank of Oak Ridge, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to Bank of Oak Ridge, pursuant to the terms and conditions of this Plan. The Debtors shall repay the principal indebtedness due under the Class XV Secured Claim to Bank of Oak Ridge at the rate of one thousand, sixty seven dollars and one cent ($1,067.01) per month for a period of sixty (60) months, at which time the remaining balance of the note shall be due in full unless otherwise agreed to by the Debtors and Bank of Oak Ridge. Interest shall accrue at a rate of seven and one quarter percent (7.25%). Bank of Oak Ridge shall file a proof of claim within sixty (60) days following the Effective Date of the Plan setting forth the arrearages owed under the Note, if any, at which point the Debtors shall have thirty (30) days with which to object to said proof of claim. If any arrearages are owed under the Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of seven and one quarter percent (7.25%). In the event Bank of Oak Ridge fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Bank of Oak Ridge will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the effective date of

14

the Plan.

      1.15d    This Class is impaired.

      1.16a    <u>Class XVI -Secured Claim of Wells Fargo Bank</u>

      1.16b    <u>Description</u>:    Wells Fargo Bank has thirty (30) Secured Claims, described as follows:

      1.16b.i    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of forty one thousand dollars and no cents ($41,000.00) which is secured by the Debtors' Real Property at 801 Aladdin Street, Greensboro, NC (hereinafter the "801 Aladdin Note"). The 801 Aladdin Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 801 Aladdin Note the indebtedness was to be paid at a rate of one hundred and eighty dollars and seventeen cents ($180.17) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of thirty nine thousand, five hundred one dollars and eighty nine cents ($39,501.89) including two thousand four hundred twenty nine dollars and fifty two cents ($2,429.52) in arrears.

      1.16b.ii    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about August 25, 2006 in the original amount of three hundred and fifty thousand dollars ($350,000.00) which is secured by the Debtors' Real Property at 1107 E. Beach Drive, Oak Island, NC (hereinafter the "1107 E. Beach Note"). The 1107 E. Beach Note is evidenced by a Promissory Note and Deed of Trust dated August 30, 2006. The Debtors entered into a second Deed of Trust and Promissory Note dated October 12, 2007, and recorded October 24, 2007, securing the principal amount of six hundred forty eight thousand, four hundred eighty five dollars and no cents ($648,485.00). Pursuant to the terms of the 1107 E. Beach Note the indebtedness was to be paid at a rate of four thousand, two hundred and seventy four dollars and sixty seven cents ($4,274.67) per month until November 11, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of eight and two one hundredths percent (8.02%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of six hundred eighty one thousand, nine hundred ninety five dollars and ninety eight cents ($681,995.98) including two hundred sixty three thousand, eight hundred fifty three dollars and ninety eight cents ($263,583.98) in arrears.

      1.16b.iii    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of sixty six thousand dollars ($66,000.00) which is secured by the Debtors' Real Property at 2503 E. Bessemer Ave, Greensboro, NC (hereinafter the "2503 E. Bessemer Note"). The 2503 E. Bessemer Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 2503 E. Bessemer Note the indebtedness was to be paid at a rate of two hundred ninety dollars and seventeen cents ($290.17) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of

the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty two thousand, three hundred eighty one dollars and ninety one cents ($62,381.91) including four thousand, two hundred seventy eight dollars and thirty eight cents ($4,278.38) in arrears.

1.16b.iv    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of seventy four thousand, two hundred dollars and no cents ($74,200.00) which is secured by the Debtors' Real Property at 2604 Brim Road, Greensboro, NC (hereinafter the "2604 Brim Note"). The Real Property at 2604 Brim Road is a duplex, and has the property address of both 2604 Brim Road and 2606 Brim Road, Greensboro, NC. The 2604 Brim Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 2604 Brim Note the indebtedness was to be paid at a rate of three hundred twenty six dollars and nine cents ($326.09) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty nine thousand, three hundred thirty six dollars and forty three cents ($69,336.43) including five thousand, sixty eight dollars and seventy cents ($5,068.70) in arrears.

1.16b.v    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of seventy four thousand, six hundred dollars and no cents ($74,600.00) which is secured by the Debtors' Real Property at 2608 Brim Road, Greensboro, NC (hereinafter the "2608 Brim Note"). The Real Property at 2608 Brim Road is a duplex, and has the property address of both 2608 Brim Road and 2610 Brim Road, Greensboro, NC. The 2608 Brim Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 2608 Brim Note the indebtedness was to be paid at a rate of three hundred, twenty seven dollars and eighty four cents ($327.84) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty nine thousand, seven hundred ninety one dollars and fifty nine cents ($69,791.59) including four thousand, eight hundred eighty one dollars and sixty seven cents ($4,881.67) in arrears.

1.16b.vi    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of seventy three thousand, five hundred dollars and no cents ($73,500.00) which is secured by the Debtors' Real Property at 2612 Brim Road, Greensboro, NC (hereinafter the "2612 Brim Note"). The Real Property at 2612 Brim Road is a duplex, and has the property address of both 2612 Brim Road and 2614 Brim Road, Greensboro, NC. The 2612 Brim Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 2612 Brim Note the indebtedness was to be paid at a rate of three hundred sixteen dollars and forty cents ($316.40) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty

16

seven thousand, one hundred fifty seven dollars and sixty cents ($67,157.60) including three thousand, nine hundred ninety one dollars and seventy six cents ($3,991.76) in arrears.

      1.16b.vii     Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of seventy three thousand dollars and no cents ($73,000.00) which is secured by the Debtors' Real Property at 2616 Brim Road, Greensboro, NC (hereinafter the "2616 Brim Note"). The Real Property at 2616 Brim Road is a duplex, and has the property address of both 2616 Brim Road and 2618 Brim Road, Greensboro, NC. The 2616 Brim Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 2616 Brim Note the indebtedness was to be paid at a rate of three hundred twenty dollars and ninety five cents ($320.95) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty eight thousand, five hundred thirty four dollars and seventy four cents ($68,534.74) including four thousand seven hundred forty eight dollars and ninety eight cents ($4,748.98) in arrears.

      1.16b.viii     Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 27, 2001 in the original amount of sixty six thousand, seven hundred and fifty dollars ($66,750.00) which is secured by the Debtors' Real Property at 3724 Central Avenue, Greensboro, NC (hereinafter the "3724 Central Note"). The 3724 Central Note is evidenced by a Promissory Note and Deed of Trust dated November 27, 2001. Pursuant to the terms of the 3724 Central Note the indebtedness was to be paid at a rate of two hundred ninety nine dollars and forty two cents ($299.42) per month until December 1, 2031 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was two and eight hundred, seventy five one thousandths percent (2.875%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of fifty eight thousand, three hundred forty seven dollars and ten cents ($58,347.10) including three thousand, four hundred thirty two dollars and three cents ($3,432.03) in arrears.

      1.16b.ix     Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of seventy one thousand, two hundred dollars and no cents ($71,200.00) which is secured by the Debtors' Real Property at 3816 A Central Avenue, Greensboro, NC (hereinafter the "3816 A Central Note"). The 3816 A Central Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 3816 A Central Note the indebtedness was to be paid at a rate of five hundred, six dollars and sixty six cents ($506.66) per month until January 4, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of fifty four thousand, four hundred fifty three dollars and five cents ($54,453.05).

      1.16b.x     Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of forty thousand dollars and no cents ($40,000.00) which is secured by the Debtors' Real Property at 3816 Central Avenue,

Greensboro, NC (hereinafter the "3816 Central Note"). The 3816 Central Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 3816 Central Note the indebtedness was to be paid at a rate of one hundred seventy five dollars and eighty five cents ($175.85) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of thirty eight thousand, six hundred thirty three dollars and ninety eight cents ($38,633.98) including two thousand, two hundred eighteen dollars and forty seven cents ($2,218.47) in arrears.

        1.16b.xi        Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of fifty two thousand, five hundred dollars and no cents ($52,500.00) which is secured by the Debtors' Real Property at 700 Cole Street, Greensboro, NC (hereinafter the "700 Cole Note"). The 700 Cole Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 700 Cole Note the indebtedness was to be paid at a rate of two hundred thirty dollars and eighty one cents ($230.81) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty nine thousand, three hundred forty five dollars and fifteen cents ($49,345.15) including three thousand, one hundred thirty nine dollars and eighty five cents ($3,139.85) in arrears.

        1.16b.xii        Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about June 29, 2007 in the original amount of fifty one thousand dollars and no cents ($51,000.00) which is secured by the Debtors' Real Property at 543 Denny Road, Greensboro, NC (hereinafter the "543 Denny Note"). The 543 Denny Note is evidenced by a Promissory Note and Deed of Trust dated June 29, 2007. Pursuant to the terms of the 543 Denny Note the indebtedness was to be paid at a rate of two hundred forty eight dollars and seventy cents ($248.70) per month until February 1, 2011 at which time the indebtedness was to be paid at a rate of three hundred sixteen dollars and twenty seven cents ($316.27) until July 1, 2011 at which time the indebtedness was to be paid at a rate of three hundred thirty four dollars and ninety two cents ($334.92) until July 1, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of seven and fifty five one hundredths percent (7.55%). It is anticipated that Wells Fargo's Secured Claim based on the 543 Denny Note will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5). As a result, it is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty eight thousand, two hundred dollars and no cents ($48,200.00) and an allowed Class XIX – General Unsecured Claim in the amount of fourteen thousand, seven hundred thirty seven dollars and fifty four cents ($14,737.54).

        1.16b.xiii        Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about June 14, 2002 in the original amount of sixty seven thousand, five hundred dollars and no cents ($67,500.00) which is secured by the Debtors' Real Property at 3939-A Eastland Avenue, Greensboro, NC (hereinafter the "3939 A Eastland Note"). The 3939 A Eastland Note

is evidenced by a Promissory Note and Deed of Trust dated June 14, 2002. Pursuant to the terms of the 3939 A Eastland Note the indebtedness was to be paid at a rate of five hundred one dollars and nineteen cents ($501.19) per month until July 2012 at which time the interest rate of the Note would change and the payment rate would adjust accordingly. Payments would continue under the 3939 A Eastland Note until July 1, 2032 when the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which was originally a rate of eight and one hundred twenty five one thousandths percent (8.125%). At the petition date interest was accruing at the rate of three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty one thousand, two hundred fourteen dollars and fifty three cents ($61,214.53).

   1.16b.xiv Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about June 14, 2002 in the original amount of sixty six thousand, three hundred seventy five dollars and no cents ($66,375.00) (hereinafter the "3943 Eastland Note"). The 3943 Eastland Note is evidenced by a Promissory Note and Deed of Trust dated June 14, 2002. The Deed of Trust lists the address of the Real Property that secures the 3943 Eastland Note as 3945 Eastland Avenue, Greensboro, NC. The Debtors did not own an interest in the Real Property located at 3945 Eastland Ave, Greensboro, NC. As such, the Debtors will be objecting to Wells Fargo Bank's Proof of Claim, and will be moving to have the Deed of Trust set aside. The 3943 Eastland Note is not properly secured. It is anticipated that the Debtors will be objecting to Wells Fargo Bank's Class XVI claim in the prepetition amount of sixty thousand, one hundred sixty nine dollars and eighty eight cents ($60,169.88).

   1.16b.xv Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of fifty two thousand, five hundred dollars and no cents ($52,500.00) which is secured by the Debtors' Real Property at 3527 Fiesta Drive, Greensboro, NC (hereinafter the "3527 Fiesta Note"). The 3527 Fiesta Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 3527 Fiesta Note the indebtedness was to be paid at a rate of two hundred twenty two dollars and no cents ($222.00) per month until January 1, 2034 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty eight thousand, fifty three dollars and seven cents ($48,053.07) including two thousand, seven hundred seventy four dollars and twenty one cents ($2,774.21) in arrears.

   1.16b.xvi Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about December 8, 2003 in the original amount of sixty thousand, five hundred dollars and no cents ($60,500.00) which is secured by the Debtors' Real Property at 2217 West Florida Street, Greensboro, NC (hereinafter the "2217 Florida Note"). The 2217 Florida Note is evidenced by a Promissory Note and Deed of Trust dated December 8, 2003. Pursuant to the terms of the 2217 Florida Note the indebtedness was to be paid at a rate of three hundred forty three dollars and fifty one cents ($343.51) per month until January 2009 at which time the interest rate would change, and the payments would adjust. Payments under the 2217 Florida Note would continue until January 1, 2034 at which time the balance of the Note would be due and payable. Interest

would accrue at a variable interest rate, which was originally five and one half percent (5.5%), which rate changed to three percent (3.0%) at the date of the petition. It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of fifty seven thousand, two hundred twelve dollars and fifty seven cents ($57,212.57).

      1.16b.xvii      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about March 10, 2005 in the original amount of four hundred seventy five thousand dollars and no cents ($475,000.00) which is secured by the Debtors' Real Property at 3703 Friendly Acres Drive, Greensboro, NC (hereinafter the "3703 Friendly Acres Note"). The 3703 Friendly Acres Note is evidenced by a Promissory Note and Deed of Trust dated March 10, 2005. Pursuant to the terms of the 3703 Friendly Acres Note the indebtedness was to be paid at a rate of one thousand, one hundred sixty four dollars and seventeen cents ($1,164.17) per month until March 9, 2045 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of four hundred eighty one thousand, nine hundred ninety two dollars and eighteen cents ($481,992.18) including two thousand three hundred fifty eight dollars and sixty six cents ($2,358.66) in arrears.

      1.16b.xviii      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about April 20, 2007 in the original amount of sixty thousand dollars and no cents ($60,000.00) which is secured by the Debtors' Real Property at 1809 Gatewood Avenue, Greensboro, NC (hereinafter the "1809 Gatewood Note"). The 1809 Gatewood Note is evidenced by a Promissory Note and Deed of Trust dated April 20, 2007. Pursuant to the terms of the 1809 Gatewood Note the indebtedness was to be paid at a rate of two hundred ninety two dollars and fifty eight cents ($292.58) per month until May 1, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of seven and one tenth percent (7.1%). It is anticipated that Wells Fargo's Secured Claim based on the 1809 Gatewood Note will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5). As a result, it is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty two thousand, three hundred dollars and no cents ($62,300.00) and an allowed Class XIX – General Unsecured Claim in the amount of ten thousand, five hundred eighty two dollars and thirty nine cents ($10,582.39).

      1.16b.xix      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 26, 2007 in the original amount of seventy six thousand dollars and no cents ($76,000.00) which is secured by the Debtors' Real Property at 1705 Gordon Street, Greensboro, NC (hereinafter the "1705 Gordon Note"). The 1705 Gordon Note is evidenced by a Promissory Note and Deed of Trust dated November 26, 2007. Pursuant to the terms of the 1705 Gordon Note the indebtedness was to be paid at a rate of three hundred ninety dollars and seventy three cents ($390.73) per month until December 1, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of seven and six tenths percent (7.6%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of ninety thousand, nine hundred thirteen dollars and thirteen cents ($90,913.13) including ten thousand, one hundred seventy three dollars and seventy four cents ($10,173.74) in arrears.

1.16b.xx      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on
or about October 27, 2003 in the original amount of forty six thousand dollars and no cents
($46,000.00) which Note is secured by the Debtors' Real Property at 1301 Hickory Street,
Greensboro, NC (hereinafter the "1301 Hickory Note"). The 1301 Hickory Note is evidenced by
a Promissory Note and Deed of Trust dated October 27, 2003. Pursuant to the terms of the 1301
Hickory Note the indebtedness was to be paid at a rate of two hundred dollars and eighty seven
cents ($200.87) per month until November 1, 2033 at which time the balance of the Note would
be due and payable. Interest would accrue at a variable interest rate, which at the date of the
petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim
in the prepetition amount of forty three thousand, two hundred ninety nine dollars and nine cents
($43,299.09) including two thousand seven hundred six dollars and one cent ($2,706.01) in
arrears.

1.16b.xxi      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on
or about April 20, 2007 in the original amount of sixty four thousand, eight hundred dollars and
no cents ($64,800.00) which is secured by the Debtors' Real Property at 1208 Huffine Mill
Road, Greensboro, NC (hereinafter the "1208 Huffine Note"). The 1208 Huffine Note is
evidenced by a Promissory Note and Deed of Trust dated April 20, 2007. Pursuant to the terms
of the 1208 Huffine Note the indebtedness was to be paid at a rate of four hundred twenty seven
dollars and seven cents ($423.07) per month until May 1, 2037 at which time the balance of the
Note would be due and payable. Interest would accrue at a rate of seven and three tenths percent
(7.3%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount
of eighty eight thousand, two hundred eighty one dollars and one cent ($88,281.01) including
seven thousand, twenty seven dollars and ten cents ($7,027.10) in arrears.

1.16b.xxii      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on
or about October 27, 2003 in the original amount of thirty seven thousand, five hundred dollars
and no cents ($37,500.00) which is secured by the Debtors' Real Property at 1400 Kingston
Road, Greensboro, NC (hereinafter the "1400 Kingston Note"). The 1400 Kingston Note is
evidenced by a Promissory Note and Deed of Trust dated October 27, 2003. Pursuant to the
terms of the 1400 Kingston Note the indebtedness was to be paid at a rate of one hundred sixty
one dollars and ninety nine cents ($161.99) per month until November 1, 2033 at which time the
balance of the Note would be due and payable. Interest would accrue at a variable interest rate,
which at the date of the petition was three percent (3.0%). It is anticipated that there will be an
allowed Class XVI claim in the prepetition amount of thirty four thousand, two hundred sixteen
dollars and ninety seven cents ($34,216.97) including two thousand, one hundred eighty two
dollars and twenty seven cents ($2,182.27) in arrears.

1.16b.xxiii      Wells Fargo Bank has a Secured Claim pursuant to a note entered into on
or about October 27, 2003 in the original amount of forty three thousand dollars and no cents
($43,000.00) which is secured by the Debtors' Real Property at 3618 Martin Street, Greensboro,
NC (hereinafter the "3618 Martin Note"). The 3618 Martin Note is evidenced by a Promissory
Note and Deed of Trust dated October 27, 2003. Pursuant to the terms of the 3618 Martin Note
the indebtedness was to be paid at a rate of one hundred eighty nine dollars and forty six cents

($189.46) per month until November 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty one thousand, eighty three dollars and fifty three cents ($41,083.53) including two thousand, five hundred fifty two dollars and thirty four cents ($2,552.34) in arrears.

1.16b.xxiv    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about April 20, 2007 in the original amount of seventy eight thousand, eight hundred dollars and no cents ($78,800.00) which is secured by the Debtors' Real Property at 3620 Martin Avenue, Greensboro, NC (hereinafter the "3620 Martin Note"). The 3620 Martin Note is evidenced by a Promissory Note and Deed of Trust dated April 20, 2007. Pursuant to the terms of the 3620 Martin Note the indebtedness was to be paid at a rate of three hundred eighty four dollars and twenty five cents ($384.25) per month until May 1, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of seven and three tenths percent (7.3%). It is anticipated that Wells Fargo's Secured Claim based on the 3620 Martin Note will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5). As a result, it is anticipated that there will be an allowed Class XVI claim in the prepetition amount of eighty three thousand, one hundred dollars and no cents ($83,100.00) and an allowed Class XIX – General Unsecured Claim in the amount of twelve thousand, two hundred ninety dollars and forty two cents ($12,290.42).

1.16b.xxv    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about April 20, 2007 in the original amount of sixty five thousand dollars and no cents ($65,000.00) which is secured by the Debtors' Real Property at 2023 Pine Bluff Street, Greensboro, NC (hereinafter the "2023 Pine Bluff Note"). The 2023 Pine Bluff Note is evidenced by a Promissory Note and Deed of Trust dated April 20, 2007. Pursuant to the terms of the 2023 Pine Bluff Note the indebtedness was to be paid at a rate of three hundred sixteen dollars and ninety seven cents ($316.97) per month until May 1, 2037 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of seven and three tenths percent (7.3%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of eighty thousand, sixty three dollars and ninety one cents ($80,063.91) including nine thousand, sixteen dollars and twenty nine cents ($9,016.29) in arrears.

1.16b.xxvi    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about March 11, 2002 in the original amount of sixty six thousand, seven hundred and fifty dollars ($66,750.00) which is secured by the Debtors' Real Property at 1712 Ryan Street, Greensboro, NC (hereinafter the "1712 Ryan Note"). The 1712 Ryan Note is evidenced by a Promissory Note and Deed of Trust dated March 11, 2002. Pursuant to the terms of the 1712 Ryan Note the indebtedness was to be paid at a rate of two hundred ninety eight dollars and five cents ($298.05) per month until April 1, 2032 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty thousand, six hundred ninety one dollars and seventy nine cents

($60,691.79) including five thousand, four hundred sixty three dollars and twenty one cents ($5,463.21) in arrears.

1.16b.xxvii    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of forty four thousand dollars and no cents ($44,000.00) which is secured by the Debtors' Real Property at 908 West Terrell Street, Greensboro, NC (hereinafter the "908 Terrell Note"). The 908 Terrell Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 908 Terrell Note the indebtedness was to be paid at a rate of one hundred ninety three dollars and twenty four cents ($193.24) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty two thousand, nine hundred twenty eight dollars and fifty cents ($42,928.50) including two thousand, six hundred twenty eight dollars and seventy four cents ($2,628.74) in arrears.

1.16b.xxviii    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of forty nine thousand dollars and no cents ($49,000.00) which is secured by the Debtors' Real Property at 1801 Willowmore Street, Greensboro, NC (hereinafter the "1801 Willowmore Note"). The 1801 Willowmore Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 1801 Willowmore Note the indebtedness was to be paid at a rate of two hundred fifteen dollars and thirty three cents ($215.33) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of forty five thousand, three hundred twenty five dollars and eighty one cents ($45,325.81) including two thousand, nine hundred twenty nine dollars and eighteen cents ($2,929.18) in arrears.

1.16b.xxix    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about January 30, 2002 in the original amount of sixty seven thousand, one hundred twenty five dollars and no cents ($67,125.00) which is secured by the Debtors' Real Property at 4109 Woodale Lane, Greensboro, NC (hereinafter the "4109 Woodale Note"). The 4109 Woodale Note is evidenced by a Promissory Note and Deed of Trust dated January 30, 2002. Pursuant to the terms of the 4109 Woodale Note the indebtedness was to be paid at a rate of four hundred ninety eight dollars and forty one cents ($498.41) per month until September 2003 at which time the interest rate was reduced to four and eight hundred seventy five one thousandths percent (4.875%) at which time monthly payments would be reduced until September 2008 at which time the interest rate would change again and monthly payments would resume under the new interest rate until February 1, 2032 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of sixty thousand, one hundred thirty four dollars and twenty two cents ($60,134.22).

1.16b.xxx    Wells Fargo Bank has a Secured Claim pursuant to a note entered into on or about November 17, 2003 in the original amount of fifty nine thousand, five hundred dollars and no cents ($59,500.00) which is secured by the Debtors' Real Property at 4110 Woodale Lane, Greensboro, NC (hereinafter the "4110 Woodale Note"). The 4110 Woodale Note is evidenced by a Promissory Note and Deed of Trust dated November 17, 2003. Pursuant to the terms of the 4110 Woodale Note the indebtedness was to be paid at a rate of two hundred sixty one dollars and forty nine cents ($261.49) per month until December 1, 2033 at which time the balance of the Note would be due and payable. Interest would accrue at a variable interest rate, which at the date of the petition was three percent (3.0%). It is anticipated that there will be an allowed Class XVI claim in the prepetition amount of fifty six thousand, four hundred twenty two dollars and sixty four cents ($56,422.64) including four thousand, three hundred twenty nine dollars and thirty seven cents ($4,329.37) in arrears.

1.16c    Treatment: The Allowed Secured Claim of Bank of Wells Fargo Bank shall be paid in full. Wells Fargo Bank shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority. The Class XVI Secured Claim shall be treated as follows:

1.16c.i    Upon information available to the Debtors, the Debtors' Collateral securing the 801 Aladdin Note has a fair market value of forty six thousand, six hundred dollars and no cents ($46,600.00) as a result the allowed claim of Wells Fargo Bank for the 801 Aladdin Note shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of forty six thousand, six hundred dollars and no cents ($46,600.00) for the real property located at 801 Aladdin Street, Greensboro, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the collateral securing the 801 Aladdin Note as of the Effective Date of the Plan. Wells Fargo Bank shall liquidate the collateral and apply the proceeds against the claim. Wells Fargo shall be entitled to one hundred and twenty (120) days from the date the Debtors surrender the Collateral in which to amend their Proof of Claim, or file a new Proof of Claim, asserting any deficiency balance that may be owed. Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

1.16c.ii    Upon information available to the Debtors, the Debtors' Collateral securing the 1107 E. Beach Note has a fair market value of three hundred thirty one thousand, four hundred eighty dollars and no cents ($331,480.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of three hundred thirty one thousand, four hundred eighty dollars and no cents ($331,480.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of three hundred thirty one thousand, four hundred eighty dollars and no cents ($331,480.00) for the real property located at 1107 E. Beach Drive, Oak Island, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a

24

valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the collateral securing the 1107 E. Beach Note as of the Effective Date of the Plan. Wells Fargo Bank shall liquidate the collateral and apply the proceeds against the claim. Wells Fargo shall be entitled to one hundred and twenty (120) days from the date the Debtors surrender the Collateral in which to amend their Proof of Claim, or file a new Proof of Claim, asserting any deficiency balance that may be owed. Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

1.16c.iii    Upon information available to the Debtors, the Debtors' Collateral securing the 2503 E. Bessemer Note has a fair market value of fifty three thousand, seven hundred dollars and no cents ($53,700.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of fifty three thousand, seven hundred dollars and no cents ($53,700.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of fifty three thousand, seven hundred dollars and no cents ($53,700.00) for the real property located at 2503 E. Bessemer Ave, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2503 E. Bessemer Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2503 E. Bessemer Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2503 E. Bessemer Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2503 E. Bessemer Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.iv    Upon information available to the Debtors, the Debtors' Collateral securing the 2604 Brim Note has a fair market value of eighty eight thousand, six hundred dollars and no cents ($88,600.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market

value of eighty eight thousand, six hundred dollars and no cents ($88,600.00) for the real property located at 2604 Brim Road, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2604 Brim Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2604 Brim Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2604 Brim Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2604 Brim Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.v        Upon information available to the Debtors, the Debtors' Collateral securing the 2608 Brim Note has a fair market value of ninety four thousand, two hundred dollars and no cents ($94,200.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of ninety four thousand, two hundred dollars and no cents ($94,200.00) for the real property located at 2608 Brim Road, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2608 Brim Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2608 Brim Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2608 Brim Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2608 Brim Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed

interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.vi    Upon information available to the Debtors, the Debtors' Collateral securing the 2612 Brim Note has a fair market value of one hundred two thousand, eight hundred dollars and no cents ($102,800.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of one hundred two thousand, eight hundred dollars and no cents ($102,800.00) for the real property located at 2612 Brim Road, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2612 Brim Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2612 Brim Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2612 Brim Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2612 Brim Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.vii    Upon information available to the Debtors, the Debtors' Collateral securing the 2616 Brim Note has a fair market value of eighty four thousand, nine hundred dollars and no cents ($84,900.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty four thousand, nine hundred dollars and no cents ($84,900.00) for the real property located at 2616 Brim Road, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2616 Brim Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to

§506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2616 Brim Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2616 Brim Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2616 Brim Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.viii    Upon information available to the Debtors, the Debtors' Collateral securing the 3724 Central Note has a fair market value of seventy thousand, three hundred dollars and no cents ($70,300.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of seventy thousand, three hundred dollars and no cents ($70,300.00) for the real property located at 3724 Central Avenue, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 3724 Central Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 3724 Central Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 3724 Central Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 3724 Central Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of two and eight hundred seventy five one thousandths percent (2.875%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the

28

Plan.

      1.16c.ix      Upon information available to the Debtors, the Debtors' Collateral securing the 3816 A Central Note has a fair market value of seventy one thousand, two hundred dollars and no cents ($71,200.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of seventy one thousand, two hundred dollars and no cents ($71,200.00) for the real property located at 3816 A Central Avenue, Greensboro, NC. . To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

      The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan. The balance due under the 3816 A Central Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

      1.16c.x      Upon information available to the Debtors, the Debtors' Collateral securing the 3816 Central Note has a fair market value of thirty eight thousand, six hundred dollars and no cents ($38,600.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of thirty eight thousand, six hundred dollars and no cents ($38,600.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of thirty eight thousand, six hundred dollars and no cents ($38,600.00) for the real property located at 3816 Central Avenue, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 3816 Central Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

      The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 3816 Central Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 3816 Central Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 3816 Central Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank

will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

      1.16c.xi      Upon information available to the Debtors, the Debtors' Collateral securing the 700 Cole Note has a fair market value of sixty one thousand, two hundred dollars and no cents ($61,200.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of sixty one thousand, two hundred dollars and no cents ($61,200.00) for the real property located at 700 Cole Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 700 Cole Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

      The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 700 Cole Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 700 Cole Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 700 Cole Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

      1.16c.xii      Upon information available to the Debtors, the Debtors' Collateral securing the 543 Denny Note has a fair market value of forty eight thousand, two hundred dollars and no cents ($48,200.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of forty eight thousand, two hundred dollars and no cents ($48,200.00). The remaining amount of Wells Fargo's Allowed Claim, or fourteen thousand, seven hundred thirty seven dollars and fifty four cents ($14,737.54) will be deemed unsecured. The fair market value of the Wells Fargo Bank collateral is based on a market value of forty eight thousand, two hundred dollars and no cents ($48,200.00) for the real property located at 543 Denny Road, Greensboro, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan. The secured claim under the 543 Denny Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan. Wells Fargo shall have a Class XIX General Unsecured Creditors claim in the amount of fourteen thousand, seven hundred thirty seven dollars and fifty four cents ($14,737.54), such amount representing the unsecured portion of Wells Fargo's claim. The Wells Fargo claim will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5).

      1.16c.xiii      Upon information available to the Debtors, the Debtors' Collateral securing the 3939 A Eastland Note has a fair market value of eighty six thousand, nine hundred dollars and no cents ($86,900.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty six thousand, nine hundred dollars and no cents ($86,900.00) for the real property located at 3939-A Eastland Avenue, Greensboro, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan. The balance due under the 3939 A Eastland Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

      1.16c.xiv      Upon information available to the Debtors, the Debtors property located at 3943 Eastland Avenue, Greensboro, NC does not secure the debt obligation in the 3943 Eastland Note. As a result the claim of Wells Fargo Bank shall be unsecured in full. The claim of Wells Fargo Bank shall be treated in accordance with Class XIX – General Unsecured. If it is determined that the property located at 3943 Eastland Avenue, Greensboro, NC does secure the debt obligation in the 3943 Eastland Note, the indebtedness shall be satisfied as follows:

The Debtors shall surrender the Collateral securing the 3943 Eastland Note to Wells Fargo Bank within the latter of thirty (30) days from the confirmation of the Plan or thirty (30) days from the determination that the property located at 3943 Eastland Ave secures the debt obligation of the 3943 Eastland Note. Wells Fargo Bank shall liquidate the Collateral securing the 3943 Eastland Note, and all proceeds shall be used to pay down the indebtedness due under the Note. Wells Fargo Bank shall have one hundred and twenty (120) days from the date the

Debtors surrender the Collateral securing the 3943 Eastland Note in which to file a Proof of Claim asserting a deficiency, if one exists, or to amend their previous Claim. Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

       1.16c.xv     Upon information available to the Debtors, the Debtors' Collateral securing the 3527 Fiesta Note has a fair market value of seventy six thousand, seven hundred dollars and no cents ($76,700.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of seventy six thousand, seven hundred dollars and no cents ($76,700.00) for the real property located at 3724 Fiesta Drive, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 3527 Fiesta Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

       The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 3527 Fiesta Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 3527 Fiesta Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 3527 Fiesta Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

       1.16c.xvi     Upon information available to the Debtors, the Debtors' Collateral securing the 2217 Florida Note has a fair market value of seventy seven thousand, seven hundred dollars and no cents ($77,700.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of seventy seven thousand, seven hundred dollars and no cents ($77,700.00) for the real property located at 2217 West Florida Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2217 Florida Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2217 Florida Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2217 Florida Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2217 Florida Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

1.16c.xvii    Upon information available to the Debtors, the Debtors' Collateral securing the 3703 Friendly Acres Note has a fair market value of three hundred twenty three thousand, three hundred dollars and no cents ($323,300.00). The Debtors' Collateral securing the 3703 Friendly Acres Note is the Debtors' primary residence, and as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of three hundred twenty three thousand, three hundred dollars and no cents ($323,300.00) for the real property located at 3703 Friendly Acres Drive, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 3703 Friendly Acres Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 3703 Friendly Acres Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 3703 Friendly Acres Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 3703 Friendly Acres Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan.

33

1.16c.xviii    Upon information available to the Debtors, the Debtors' Collateral securing the 1809 Gatewood Note has a fair market value of sixty two thousand, three hundred dollars and no cents ($62,300.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of sixty two thousand, three hundred dollars and no cents ($62,300.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of sixty two thousand, three hundred dollars and no cents ($62,300.00) for the real property located at 1809 Gatewood Avenue, Greensboro, NC.  To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan.  The secured claim under the 1809 Gatewood Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments.  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the effective date of the Plan. Wells Fargo shall have a Class XIX General Unsecured Creditors claim in the amount of ten thousand, five hundred eithty two dollars and thirty nine cents ($10,582.39), such amount representing the unsecured portion of Wells Fargo's claim. The Wells Fargo claim will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5).

1.16c.xix    Upon information available to the Debtors, the Debtors' Collateral securing 1705 Gordon Note has a fair market value of ninety two thousand, one hundred dollars and no cents ($92,100.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full.  The fair market value of the Wells Fargo Bank collateral is based on a market value of ninety two thousand, one hundred dollars and no cents ($92,100.00) for the real property located at 1705 Gordon Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 1705 Gordon Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 1705 Gordon Note.  In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 1705 Gordon Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 1705 Gordon Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed

34

interest rate of seven and six tenths percent (7.6%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

   1.16c.xx  Upon information available to the Debtors, the Debtors' Collateral securing the 1301 Hickory Note has a fair market value of forty four thousand dollars and no cents ($44,000.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of forty four thousand dollars and no cents ($44,000.00) for the real property located at 1301 Hickory Street, Greensboro, NC.  To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

   Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the collateral securing the 1301 Hickory Note as of the Effective Date of the Plan.  Wells Fargo Bank shall liquidate the collateral and apply the proceeds against the claim.  Wells Fargo shall be entitled to one hundred and twenty days (120) from the date the Debtors surrender the Collateral in which to amend their Proof of Claim, or file a new Proof of Claim, asserting any deficiency balance that may be owed.  Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

   1.16c.xxi  Upon information available to the Debtors, the Debtors' Collateral securing the 1208 Huffine Note has a fair market value of eighty thousand, six hundred dollars and no cents ($80,600.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of eighty thousand, six hundred dollars and no cents ($80,600.00).  The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty thousand, six hundred dollars and no cents ($80,600.00) for the real property located at 1208 Huffine Mill Road, Greensboro, NC.  To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

   Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the collateral securing the 1208 Huffine Note as of the Effective Date of the Plan.  Wells Fargo Bank shall liquidate the Collateral securing the 1208 Huffine Note, and all proceeds shall be used to pay down the indebtedness due under the Note.  Wells Fargo Bank shall have one hundred and twenty (120) days from the date the Debtors surrender the Collateral securing the 1208 Huffine Note in which to file a Proof of Claim asserting a deficiency, if one exists, or to amend their previous Claim.  Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

1.16c.xxii    Upon information available to the Debtors, the Debtors' Collateral securing the 1400 Kingston Note has a fair market value of thirty thousand, nine hundred dollars and no cents ($30,900.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of thirty thousand, nine hundred dollars and no cents ($30,900.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of thirty thousand, nine hundred dollars and no cents ($30,900.00) for the real property located at 1400 Kingston Road, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 1400 Kingston Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 1400 Kingston Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 1400 Kingston Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 1400 Kingston Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

1.16c.xxiii    Upon information available to the Debtors, the Debtors' Collateral securing the 3618 Martin Note has a fair market value of thirty five thousand, five hundred dollars and no cents ($35,500.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of thirty five thousand, five hundred dollars and no cents ($35,500.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of thirty five thousand, five hundred dollars and no cents ($35,500.00) for the real property located at 3618 Martin Avenue, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 3618 Martin Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 3618 Martin Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days

following the Effective date of the Plan setting forth the arrearages owed under the 3618 Martin Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 3618 Martin Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

   1.16c.xxiv  Upon information available to the Debtors, the Debtors' Collateral securing the 3620 Martin Note has a fair market value of eighty three thousand, one hundred dollars and no cents ($83,100.00) as a result the allowed claim of Wells Fargo Bank shall be secured in the amount of eighty three thousand, one hundred dollars and no cents ($83,100.00). The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty three thousand, one hundred dollars and no cents ($83,100.00) for the real property located at 3620 Martin Avenue, Greensboro, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

   The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan. The secured claim under the 3620 Martin Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan. Wells Fargo shall have a Class XIX General Unsecured Creditors claim in the amount of twelve thousand, two hundred ninety dollars and forty two cents ($12,290.42), such amount representing the unsecured portion of Wells Fargo's claim. The Wells Fargo claim will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5).

   1.16c.xxv  Upon information available to the Debtors, the Debtors' Collateral securing the 2023 Pine Bluff Note has a fair market value of eighty eight thousand, five hundred dollars and no cents ($88,500.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty eight thousand, five hundred dollars and no cents ($88,500.00) for the real property located at 2023 Pine Bluff Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 2023 Pine Bluff Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the

extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 2023 Pine Bluff Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2023 Pine Bluff Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2023 Pine Bluff Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of seven and three tenths percent (7.3%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

1.16c.xxvi    Upon information available to the Debtors, the Debtors' Collateral securing the 1712 Ryan Note has a fair market value of eighty seven thousand dollars and no cents ($87,000.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty seven thousand dollars and no cents ($87,000.00) for the real property located at 1712 Ryan Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 1712 Ryan Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 1712 Ryan Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 1712 Ryan Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 1712 Ryan Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month

following the Effective Date of the Plan.

1.16c.xxvii    Upon information available to the Debtors, the Debtors' Collateral securing the 908 Terrell Note has a fair market value of fifty one thousand, four hundred dollars and no cents ($51,400.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of fifty one thousand, four hundred dollars and no cents ($51,400.00) for the real property located at 908 West Terrell Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 908 Terrell Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 908 Terrell Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 908 Terrell Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 908 Terrell Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

1.16c.xxviii    Upon information available to the Debtors, the Debtors' Collateral securing the 1801 Willowmore Note has a fair market value of sixty five thousand, seven hundred dollars and no cents ($65,700.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of sixty five thousand, seven hundred dollars and no cents ($65,700.00) for the real property located at 1801 Willowmore Street, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 1801 Willowmore Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 1801

Willowmore Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 1801 Willowmore Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 1801 Willowmore Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

      1.16c.xxix     Upon information available to the Debtors, the Debtors' Collateral securing the 4109 Woodale Note has a fair market value of eighty three thousand, six hundred dollars and no cents ($83,600.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of eighty three thousand, six hundred dollars and no cents ($83,600.00) for the real property located at 4109 Woodale Lane, Greensboro, NC. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

      The Debtors shall execute a new Note to Wells Fargo Bank pursuant to the terms and conditions of this Plan. The balance due under the 4109 Woodale Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

      1.16c.xxx     Upon information available to the Debtors, the Debtors' Collateral securing the 4110 Woodale Note has a fair market value of fifty nine thousand, two hundred dollars and no cents ($59,200.00) as a result the allowed claim of Wells Fargo Bank shall be secured in full. The fair market value of the Wells Fargo Bank collateral is based on a market value of fifty nine thousand, two hundred dollars and no cents ($59,200.00) for the real property located at 4110 Woodale Lane, Greensboro, NC. The Debtors do not intend to bifurcate Wells Fargo Bank's claim based on the 4110 Woodale Note, nor do the Debtors intend to "cram down" Wells Fargo's claim pursuant to 11 U.S.C. § 1123(b)(5), other than in respect to any arrearage claim that Wells Fargo Bank may assert, as described below. To the extent Wells Fargo Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of Wells Fargo Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay Wells Fargo Bank pursuant to the terms and conditions of the 4110 Woodale Note. In addition, Wells Fargo Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 4110 Woodale Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 4110 Woodale Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of three percent (3.0%). In the event Wells Fargo Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, Wells Fargo Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

     1.16d   This Class is impaired.

     1.17a   <u>Class XVII -Secured Claim of American Home Mortgage Servicing, Inc.</u>

     1.17b   <u>Description:</u>   American Home Mortgage Servicing, Inc. has five Secured Claims as follows:

     1.17b.i   American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about July 22, 2005 in the original amount of ninety four thousand dollars and no cents ($94,000.00) which is secured by the Debtors' Real Property at 5800 Harvest Hill Road, Greensboro, NC (hereinafter the "5800 Harvest Hill Note"). The 5800 Harvest Hill Note is evidenced by a Promissory Note and Deed of Trust dated July 22, 2005. Pursuant to the terms of the 5800 Harvest Hill Note the indebtedness was to be paid at a rate of five hundred two dollars and ninety nine cents ($502.99) per month until August 1, 2045 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of four and one half percent (4.5%). It is anticipated that there will be an allowed Class XVII claim in the prepetition amount of one hundred fifteen thousand, three hundred eighty dollars and ninety nine cents ($115,380.99) including eight thousand, six hundred dollars and eighty cents ($8,600.80) in arrears.

     1.17b.ii   American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about July 22, 2005 in the original amount of ninety seven thousand dollars and no cents ($97,000.00) which is secured by the Debtors' Real Property at 5802 Harvest Hill Road, Greensboro, NC (hereinafter the "5802 Harvest Hill Note"). The 5802 Harvest Hill Note is evidenced by a Promissory Note and Deed of Trust dated July 22, 2005. Pursuant to the terms of the 5802 Harvest Hill Note the indebtedness was to be paid at a rate of six hundred thirteen dollars and seventy two cents ($613.72) per month until August 1, 2045 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of four and one half percent (4.5%). It is anticipated that there will be an allowed Class XVII claim

41

in the prepetition amount of one hundred eighteen thousand, seven hundred nineteen dollars and fifty cents ($118,719.50).

        1.17b.iii        American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about November 18, 2004 in the original amount of eighty eight thousand dollars and no cents ($88,000.00) which is secured by the Debtors' Real Property at 2515 Cottage Place, Greensboro, NC (hereinafter the "2515 Cottage Place Note"). The 2515 Cottage Place Note is evidenced by a Promissory Note and Deed of Trust dated November 18, 2004. Pursuant to the terms of the November 18, 2004 Note the indebtedness was to be paid at a rate of four hundred and seventy seven dollars and eighty seven cents ($477.87) per month until December 1, 2044 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of an adjustable interest rate of unknown percent (?%). It is anticipated that there will be an allowed Class XVII claim in the prepetition amount of one hundred thousand, eight hundred ten dollars and thirty eight cents ($100,810.38) including two thousand, twenty nine dollars and fifty eight cents ($2,029.58) in arrears.

        1.17b.iv        American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about July 15, 2005 in the original amount of one hundred twelve thousand dollars and no cents ($112,000.00) which is secured by the Debtors' Real Property at 301 E. Bessemer Ave, Greensboro, NC (hereinafter the "301 E. Bessemer Note"). The 301 E. Bessemer Note is evidenced by a Promissory Note and Deed of Trust dated July 15, 2005. Pursuant to the terms of the July 15, 2005 Note the indebtedness was to be paid at a rate of seven hundred forty five dollars and eighty cents ($745.80) per month until August 1, 2045 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of four and one half percent (4.5%). It is anticipated that there will be an allowed Class XVII claim in the prepetition amount of one hundred forty thousand, nine hundred thirty one dollars and eighty eight cents ($140,931.88).

        1.17b.v        American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about July 15, 2005 in the original amount of one hundred twelve thousand dollars and no cents ($112,000.00) which is secured by the Debtors' Real Property at 305 E. Bessemer Ave, Greensboro, NC (hereinafter the "305 E. Bessemer Note"). The 305 E. Bessemer Note is evidenced by a Promissory Note and Deed of Trust dated July 15, 2005. Pursuant to the terms of the July 15, 2005 Note the indebtedness was to be paid at a rate of seven hundred fifty nine dollars and thirty cents ($759.30) per month until August 1, 2045 at which time the balance of the Note would be due and payable. Interest would accrue at a rate of four and one half percent (4.5%). It is anticipated that there will be an allowed Class XVII claim in the prepetition amount of one hundred forty one thousand, six hundred seventy five dollars and fifteen cents ($141,675.15).

        1.17b.vi        American Home Mortgage Servicing, Inc. has a Secured Claim pursuant to a note entered into on or about June 2, 2006 in the original amount of eighty four thousand, eight hundred dollars and no cents ($84,800.00) which is secured by the Debtors' Real Property at 101 Millikin Street, Greensboro, NC (hereinafter the "101 Millikin Note"). The 101 Millikin Note is evidenced by a Promissory Note and Deed of Trust dated June 2, 2006. Pursuant to the

terms of the 101 Millikin Note the indebtedness was to be paid at a rate of five hundred thirty
eight dollars and eight cents ($538.08) per month until July 1, 2046 at which time the balance of
the Note would be due and payable. Interest would accrue at a rate of four and one half percent
(4.5%). It is anticipated that there will be an allowed Class XVII claim in the prepetition amount
of one hundred two thousand, four hundred eleven dollars and eighty eight cents ($102,411.88)
including eleven thousand, five hundred eighty nine dollars and forty six cents ($11,589.46) in
arrears.

      1.17c  Treatment: The Allowed Secured Claim of American Home Mortgage Servicing,
Inc. shall be paid in full. American Home Mortgage Servicing, Inc. shall maintain its current
secured position on the same Collateral it currently holds as security and with the same priority.
The Class XXII Secured Claim shall be treated as follows:

      1.17c.i      Upon information available to the Debtors, the Debtors' Collateral
securing the 5800 Harvest Hill Note has a fair market value of one hundred five thousand, seven
hundred dollars and no cents ($105,700.00) as a result the allowed claim of American Home
Mortgage Servicing, Inc. for the 5800 Harvest Hill Note will be secured by one hundred five
thousand, seven hundred dollars and no cents ($105,700.00). The fair market value of the
American Home Mortgage Servicing, Inc. collateral is based on a market value of one hundred
five thousand, seven hundred dollars and no cents ($105,700.00) for the real property located at
5800 Harvest Hill Road, Greensboro, NC. To the extent American Home Mortgage Servicing,
Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of
the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of
American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a)
valuation hearing if required, shall be paid in full as follows:

      The Debtors shall pay American Home Mortgage Servicing, Inc. pursuant to the terms
and conditions of the 5800 Harvest Hill Note. In addition, American Home Mortgage Servicing,
Inc. shall file a proof of claim within sixty (60) days following the Effective date of the Plan
setting forth the arrearages owed under the 5800 Harvest Hill Note, if any, at which time the
Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are
owed under the 5800 Harvest Hill Note, the same shall be payable in sixty (60) monthly
installments, with the first payment to begin the first (1st) full month following the Effective Date
of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of four and one
half percent (4.5%). In the event American Home Mortgage Servicing, Inc. fails to file a proof of
claim for arrearages within sixty (60) days following the Effective Date of the Plan, American
Home Mortgage Servicing, Inc. will be deemed to have waived any claim for arrearages, and
payment of the same will be disallowed pursuant to this Plan. All payments shall be due and
payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth
(15th) of the first (1st) full month following the Effective Date of the Plan.

      1.17c.ii      Upon information available to the Debtors, the Debtors' Collateral
securing the 5802 Harvest Hill Note has a fair market value of one hundred five thousand, seven
hundred dollars and no cents ($105,700.00) as a result the allowed claim of American Home
Mortgage Servicing, Inc. for the 5802 Harvest Hill Note will be secured by one hundred five

thousand, seven hundred dollars and no cents ($105,700.00). The remaining amount of American Home Mortgage Servicing, Inc.'s Allowed Claim, or thirteen thousand, nineteen dollars and fifty cents ($13,019.50) shall be deemed unsecured. The fair market value of the American Home Mortgage Servicing, Inc. collateral is based on a market value of one hundred five thousand, seven hundred dollars and no cents ($105,700.00) for the real property located at 5802 Harvest Hill Road, Greensboro, NC. To the extent American Home Mortgage Servicing, Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall execute a new Note to American Home Mortgage Servicing, Inc. pursuant to the terms and conditions of this Plan. The secured claim under the 5802 Harvest Hill Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) of the first (1st) full month following the Effective Date of the Plan. American Home Mortgage Servicing, Inc. shall have a Class XIX General Unsecured Creditors claim in the amount of thirteen thousand, nineteen dollars and fifty cents ($13,019.50), such amount representing the unsecured portion of American Home Mortgage Servicing, Inc.'s claim. The American Home Mortgage Servicing, Inc. claim will be bifurcated and "crammed down" pursuant to 11 U.S.C. § 1123(b)(5).

1.17c.iii       Upon information available to the Debtors, the Debtors' Collateral securing the 2515 Cottage Place Note has a fair market value of ninety five thousand, seven hundred dollars and no cents ($95,700.00) as a result the allowed claim of American Home Mortgage Servicing, Inc. for the 2515 Cottage Place Note will be secured by ninety five thousand, seven hundred dollars and no cents ($95,700.00). The fair market value of the American Home Mortgage Servicing, Inc. collateral is based on a market value of ninety five thousand, seven hundred dollars and no cents ($95,700.00) for the real property located at 2515 Cottage Place, Greensboro, NC. To the extent American Home Mortgage Servicing, Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay American Home Mortgage Servicing, Inc. pursuant to the terms and conditions of the 2515 Cottage Place Note. In addition, American Home Mortgage Servicing, Inc. shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 2515 Cottage Place Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 2515 Cottage Place Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of

three percent (3.0%). In the event American Home Mortgage Servicing, Inc. fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, American Home Mortgage Servicing, Inc. will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan. 

     1.17c.iv    Upon information available to the Debtors, the Debtors' Collateral securing the 301 E. Bessemer Note has a fair market value of one hundred twenty six thousand, two hundred dollars and no cents ($126,200.00) as a result the allowed claim of American Home Mortgage Servicing, Inc. for the 301 E. Bessemer Note will be secured by one hundred twenty six thousand, two hundred dollars and no cents ($126,200.00). The fair market value of the American Home Mortgage Servicing, Inc. collateral is based on a market value of one hundred twenty six thousand two hundred dollars and no cents ($126,200.00) for the real property located at 301 E. Bessemer Ave, Greensboro, NC. To the extent American Home Mortgage Servicing, Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

     Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the collateral securing the 301 E. Bessemer Note as of the Effective Date of the Plan. American Home Mortgage Servicing, Inc. shall have sixty (60) days from the confirmation of the Plan to file a claim for arrears at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. American Home Mortgage Servicing, Inc. shall liquidate the Collateral securing the 301 E. Bessemer Note, and all proceeds shall be used to pay down the indebtedness due under the Note. American Home Mortgage Servicing, Inc. shall have one hundred and twenty (120) days from the date the Debtors surrender the Collateral securing the 301 E. Bessemer Note in which to file a Proof of Claim asserting a deficiency, if one exists, or to amend their previous Claim. Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

     1.17c.v    Upon information available to the Debtors, the Debtors' Collateral securing the 305 E. Bessemer Note has a fair market value of one hundred fifty four thousand seven hundred dollars and no cents ($154,700.00) as a result the allowed claim of American Home Mortgage Servicing, Inc. for the 305 E. Bessemer Note will be secured in full. The fair market value of the American Home Mortgage Servicing, Inc. collateral is based on a market value of one hundred fifty four thousand, seven hundred dollars and no cents ($154,700.00) for the real property located at 305 E. Bessemer Ave, Greensboro, NC. To the extent American Home Mortgage Servicing, Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

     The Debtors shall execute a new Note to American Home Mortgage Acceptance, Inc.

pursuant to the terms and conditions of this Plan. The balance due under the 305 E. Bessemer Note shall be paid monthly, and amortized over a three hundred and sixty (360) month period. Interest shall accrue at the current Till interest rate, which is anticipated at five and one quarter percent (5.25%). Payments shall be made in equal monthly installments. All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

1.17c.vi    Upon information available to the Debtors, the Debtors' Collateral securing the 101 Millikin Note has a fair market value of eighty four thousand dollars and no cents ($84,000.00) as a result the allowed claim of American Home Mortgage Servicing, Inc. for the 101 Millikin Note will be secured in the amount of eighty four thousand dollars and no cents ($84,000.00). The fair market value of the American Home Mortgage Servicing, Inc. collateral is based on a market value of eighty four thousand dollars and no cents ($84,000.00) for the real property located at 101 Millikin Street, Greensboro, NC. To the extent American Home Mortgage Servicing, Inc. objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing. The allowed secured claim of American Home Mortgage Servicing, Inc., as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

The Debtors shall pay American Home Mortgage Servicing, Inc. pursuant to the terms and conditions of the 101 Millikin Note. In addition, American Home Mortgage Servicing, Inc. shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the 101 Millikin Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the 101 Millikin Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of four and one half percent (4.5%). In the event American Home Mortgage Servicing, Inc. fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, American Home Mortgage Servicing, Inc. will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

1.17d    This Class is impaired.

1.18a    Class XVIII – Secured Claim of RBC Bank

1.18b    Description:    RBC Bank has a Secured Claim pursuant to a note entered into on or about August 8, 2001 in the original amount of fifty eight thousand, five hundred dollars and no cents ($58,500.00). The Loan is evidenced by a Promissory Note and Deed of Trust dated August 8, 2001. The Debtors entered into a Modification Agreement on August 4, 2006. The Debtors then entered into a Change In Terms Agreement on July 22, 2011. The Note is secured by the Debtors' Real Property at 3800 Friendly Acres Drive, Greensboro, NC. Pursuant to the terms of the Promissory Note, the Deed of Trust, and the Change In Terms Agreement, the Note

was to be paid at a rate of three hundred and one dollars and fifty five cents ($301.55) per month until July 22, 2016 at which time the remaining balance would be due in full of approximately thirty five thousand, fifteen dollars and eighty eight cents ($35,015.88). Interest would accrue at a rate of six and forty five one hundredths percent (6.45%). It is anticipated that there will be an allowed Class XVIII claim in the prepetition amount of forty thousand, four hundred eighty dollars and seven cents ($40,480.07) including three hundred one dollars and fifty five cents ($301.55) in arrears.

   1.18c Treatment: The Allowed Secured Claim of RBC Bank shall be paid in full. RBC Bank shall maintain its current secured position on the same Collateral it currently holds as security and with the same priority.  The Class XVIII Secured Claim shall be treated as follows:

   Upon information available to the Debtors, the Debtors' Collateral securing the Note has a fair market value of seventy eight thousand dollars and no cents ($78,000.00) as a result the allowed claim of RBC Bank shall be secured in full.  The fair market value of the RBC Bank collateral is based on a market value of seventy eight thousand dollars and no cents ($78,000.00) for the real property located at 3800 Friendly Acres Drive, Greensboro, NC.  To the extent RBC Bank objects to the valuation, the Debtors request that a valuation hearing, pursuant to §506(a) of the Bankruptcy Code be conducted at the confirmation hearing.  The allowed secured claim of RBC Bank, as set forth above, or as determined at the §506(a) valuation hearing if required, shall be paid in full as follows:

   The Debtors shall pay RBC Bank pursuant to the terms and conditions of the Promissory Note, the Deed of Trust, and the Change In Terms Agreement. In addition, RBC Bank shall file a proof of claim within sixty (60) days following the Effective date of the Plan setting forth the arrearages owed under the Note, if any, at which time the Debtors shall have thirty (30) days in which to object to said arrears claim. If any arrearages are owed under the Note, the same shall be payable in sixty (60) monthly installments, with the first payment to begin the first (1st) full month following the Effective Date of the Plan. Interest shall accrue on the arrearages claim at a fixed interest rate of six and forty five one hundredths percent (6.45%). In the event RBC Bank fails to file a proof of claim for arrearages within sixty (60) days following the Effective Date of the Plan, RBC Bank will be deemed to have waived any claim for arrearages, and payment of the same will be disallowed pursuant to this Plan  All payments shall be due and payable on the fifteenth (15th) of each month with the first (1st) payment due on the fifteenth (15th) day of the first (1st) full month following the Effective Date of the Plan.

   1.18d This Class is impaired.


## GENERAL UNSECURED CLAIMS

1.19a Class XIX - General Unsecured Creditors

1.19b  Description:  This Class consists of all creditors holding Allowed General Unsecured Claims, exclusive of the insider claims, or any other creditors determined to be insiders under 11 U.S.C. § 101(31). It is estimated that there will be approximately one hundred and fifteen thousand, nine hundred fifty dollars and sixty two cents ($115,950.62) of Allowed Class XIX General Unsecured. However, as of the date of this Plan, several creditors are still allowed to assert additional claims. As a result, it is anticipated that the Allowed Class XIX General Unsecured claims will increase. It is anticipated that the Debtors will be objecting to Real Time Resolutions, Inc's Claim in the amount of ninety two thousand, seven hundred seventy nine dollars and twenty five cents ($92,779.25).

1.19c  Treatment:  Each holder of an Allowed Unsecured Claim, exclusive of insiders, shall receive a Promissory Note which provides that each holder shall receive twenty-five percent (25%) of its claim to be paid over a period of sixty (60) months. Payments shall be made in ten (10) even bi-yearly payments. The first bi-yearly payment shall be made on or before the twentieth (20th) day of the second (2nd) full month following confirmation of this Plan of Reorganization. The Debtors reserve the right to prepay said claims in the event funds are available for this purpose prior to payments becoming due. In addition, in the event additional funds are retrieved pursuant to section 2.2 below, those recovered funds will be distributed to each holder of an Allowed Unsecured Claim pro-rata, over and above the anticipated twenty-five percent (25%) payout.

1.19d  Impairment:  This Class is impaired.

1.20a  Class XX - Insider Claims

1.20b  Description:  This Class consists of the claims of all insiders which hold any claim against the Debtors. This class of insiders will consist of the claims of all other creditors determined to be insiders under 11 U.S.C. § 101(31). It is not anticipated that there will be any allowed Class XX Claims.

1.20c  Treatment:  The Class XX claims of insiders shall be subordinated to all other claims in this proceeding and shall receive no payment on their claims as insiders until all payments on the claims of Class I through Class XIX are paid in full or received as dividends, all as required under the terms and conditions of this Plan.

1.20d  Impairment:  This Class is impaired.

## ARTICLE II
## MEANS FOR EXECUTION OF THE PLAN

2.1  General Information:  The provisions of this Plan call for the restructuring of certain indebtedness and extensions of time in which to meet those obligations. The obligations being restructured hereunder primarily consist of secured debts and unsecured debt obligations.

2.2    <u>Source of Funds</u>:  The Debtors anticipate, based upon projected cash flow and the restructuring of current indebtedness, as is more fully explained in Exhibits "B" and "C" attached to the Disclosure Statement to the Plan of Reorganization, that the Reorganized Debtors will have sufficient funds to pay debt obligations pursuant to the terms specified in this Plan. The cash flow is anticipated to be sufficient to pay continuing secured debt obligations and ongoing expenses as a result, in part, of changes in the Debtors' management structure to more effectively manage the affairs of the Debtors.  In order to fully consummate the Plan as proposed, it is anticipated that the Debtors will need to liquidate unencumbered assets. The Debtors have obtained court permission to employ Keith Gunter and the firm of Rodgers Realty to sell those unencumbered assets necessary to pay off arrearages on secured claims and general unsecured claims that are not able to be paid from cash flow. The Debtors have been working with Keith Gunter and the firm of Rodgers Realty in order to prioritize the order in which to liquidate those assets, and the means by which to accomplish it in a manner that maximizes funds available to Creditors.

The cash flow projections herein represent the expected income and expenditures for the Debtors' business.  In addition, the Debtors receive $1,689.50 per month in income from social security and $308.33 per month in income from 401K retirement distributions which are used towards personal expenses which are projected to be $4,500.00 per month.

2.3    <u>Asset Retention</u>:  The Reorganized Debtors shall retain all personal property and real property of the Debtors and shall continue in possession of all its property and continue the normal operation of its business until all requirements of this Plan have been satisfied in full. This Asset Retention paragraph does not prevent the Reorganized Debtors from selling assets where such is carried out in the normal operation of its business.  This is a Plan of Reorganization and not a Plan of Liquidation.

2.4    <u>Document Execution</u>:  The Reorganized Debtors will execute those documents deemed necessary to properly evidence the restructured debt obligation for the classes of creditors as set out herein.  Where such obligations involved secured indebtedness, the Reorganized Debtors will execute such documents as are deemed reasonably necessary to properly transfer the Collateral being granted to said secured creditors and such other loan modification documents as may be reasonably necessary to properly document the debt obligations as provided for in this Plan.

2.5    <u>Orders in Aid of Consummation</u>:  In the event that any Claim amounts in the classes set forth herein have not yet been determined or allowed, or in the event there are any disputes which would interfere with substantial consummation, the Court may enter an Order after notice and hearing and upon the application of any interested party to establish reasonable escrows or issue such other Orders modifying estimated claim amounts set forth herein or shall enter such other Orders as in the discretion of the Court would aid in Substantial Consummation. The Court shall further issue Orders in aid of consummation as it deems necessary for the purpose of carrying out the terms, conditions and intent of this Plan of Reorganization. Furthermore, the Court shall determine in its own discretion what further notice, if any, is required for the Court to issue an Order in Aid of Consummation.

2.6     Causes of Action:  At this time, the Debtors are investigating as to whether all payments or transfers prior to the filing of the petition were done in the ordinary course of business, received in the ordinary course of business, and whether sufficient assets exist to collect on any potential judgment.  To the extent that the Debtors determine that actions are appropriate it will institute the appropriate proceedings.  To the extent any funds are recovered, the net funds (after payment of expenses incurred in the recovery) will be used by the Debtors as an additional source of funds to supplement the Plan of Reorganization, in the form of an additional payment to Class XIX – General Unsecured Creditors over and above the current expected twenty five percent (25%) payout, as described above.

2.7     Inter-Creditor Agreements:  To the extent that inter-creditor agreements have been entered into by and between the creditors in this case, it is not the intent of this Plan to alter or otherwise modify such agreements and such agreements shall remain in full force and effect.

### ARTICLE III
### EVENTS OF DEFAULT

3.1     It shall be an event of default of the Reorganized Debtors if it fails to make the required payments when due under this Plan or fails to meet any material term or provision of this Plan and such failure of payment or performance remains unremedied for a period of fifteen (15) days after written notice of demand has been given to the Debtors by the affected party.

3.2     Upon the occurrence of an event of default, any creditor may resort to any remedy available under applicable law for the collection of any obligation owed to it.

### ARTICLE IV
### PROPERTY DEALT WITH BY THE PLAN

4.1     All property of the Debtors is dealt with by this Plan.

4.2     All unexpired leases existing on the date of the filing of the petition herein, except for those expressly dealt with by the Plan, are rejected.

4.3     All executory contracts existing on the date of the filing of the petition herein, except for those expressly dealt with by the Plan, separate motion, or previously approved by the Court and disclosed by this Plan, are rejected.  The following executory contracts are hereby expressly assumed by the Reorganized Debtor:

    a.  All insurance contracts;
    b.  All utility contracts;

c.    All leases for real property owned by the Debtors.

4.4    Without admitting the validity of any other executory contracts and unexpired leases, the Debtors hereby reject all other executory contracts and unexpired leases, including all employment contracts, to which it is a party other than the assumed executory contracts set forth hereinabove.

4.5    Any Claims arising from the rejection of executory contracts or unexpired leases, if not previously required to be filed, must be filed with the Court within thirty (30) days from the date of Confirmation of this Plan unless the time has previously been set by the Court for filing of the same and said Claims, if allowed, shall be considered a Class XIX General Unsecured Claim and treated in accordance with the provisions of Article I, Paragraph 1.19(c).

## ARTICLE V
## PROVISIONS FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

5.1    With respect to any Class of creditors impaired by and not accepting this Plan of Reorganization by the requisite majority in number and two-thirds (2/3) in amount, adequate protection for the realization by them of the value of their Claims shall be provided in the Order confirming the Plan by such method as will, in the opinion of the Bankruptcy Judge, and consistent with the circumstances of the case, fairly and equitably provide such protection in accordance with the applicable provisions of the United States Bankruptcy Code.

## ARTICLE VI
## PROVISIONS FOR RETENTION OF JURISDICTION AND
## PROSECUTION AND DEFENSE OF CLAIMS AND CAUSES OF ACTION

6.1    The Court shall retain and may exercise its jurisdiction for determination in this proceeding of any objections to Claims not disposed of prior to the entry of the Order of Confirmation of the Plan and any other matters which might affect the Debtors.

6.2    Until the case is closed, the Court shall retain jurisdiction pursuant to Bankruptcy Rule 3030(d) to insure that the purpose and intent of this Plan of Reorganization is carried out. The Court shall retain jurisdiction to hear and determine all Claims against the Debtors and to enforce all causes of action which may exist on behalf of the Debtors.  Nothing contained herein shall prevent the Reorganized Debtors from taking such action as may be necessary in the enforcement of any cause of action which may exist on behalf of the Debtors, and nothing contained herein shall prevent any creditor from enforcing any Claim it may have against third parties who may be liable as a result of the Debtors' obligations to said Creditor.

## ARTICLE VII
## DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1     Any party in interest may file an objection to any Claim within sixty (60) days after Confirmation of the Plan of Reorganization. Objections not filed by parties in interest within such time shall be deemed waived unless the period within which to file objections to Claims is extended by Order of this Court.

7.2     Any Claim, or portion hereof, which is to be paid in Cash under the Plan and to which an objection has been filed, will be protected by requiring the Debtors to segregate and set aside in a Cash escrow account an amount sufficient to make payment of said Claim in the same fashion as though the objection is denied.

## ARTICLE IX
## PROVISIONS FOR DISCHARGE AND RELEASE

8.1   The Reorganized Debtors, Wayne L. and Joyce A. Stutts, shall be discharged and released from and free of all liabilities, Claims and obligations of any nature, known or unknown, except as may be expressly provided for by this Plan of Reorganization or Confirmation Order and assumed by the Reorganized Debtors. All proceedings and Court actions seeking to establish or enforce liabilities and Claims of any nature against the Reorganized Debtors or properties received or retained by it with respect to debts and obligations of the Debtors shall be permanently stayed and enjoined except as otherwise specifically provided for in this Plan or Reorganization or Confirmation Order. Entry of the Order of Confirmation of this Plan of Reorganization in this proceeding shall itself be a judicial determination of the discharge of all liabilities of every kind and nature of the Debtor occurring prior to Confirmation of this Plan, except as provided for in this Plan of Reorganization, Order of Confirmation, or by other orders of this Court.

*(Signatures to appear on following page)*

52

RESPECTFULLY SUBMITTED, this the 31st day of August, 2012.

DEBTORS-IN-POSSESSION

BY: _____
Wayne L. Stutts

BY: _____
Joyce A. Stutts

_____
JUSTIN W. KAY
Attorney for the Debtors-in-Possession
North Carolina State Bar No. 42968

_____
DIRK W. SIEGMUND
Attorney for the Debtors-in-Possession
North Carolina State Bar No. 20796

OF COUNSEL:
IVEY, MCCLELLAN, GATTON & TALCOTT, L.L.P.
Post Office Box 3324
Greensboro, North Carolina 27402
Telephone: (336) 274-4658
Facsimile: (336) 274-4540