UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE:              ) | |
|                     ) | |
| Wayne Lester Stutts and   ) | Case No. 11-11728C-11G |
| Joyce A. Stutts,    ) | |
|                     ) | |
|     Debtors.        ) | |

### MEMORANDUM OPINION

This case came before the court on October 22, 2013, for hearing on the Debtors' objection to Claim Number 64 of American National Bank & Trust Company. Justin W. Kay appeared on behalf of the Debtors and Martha R. Sacrinty and Emma C. Baggett appeared on behalf of American National Bank & Trust Company ("American National"). Having considered the objection and the response to the objection, the evidence offered at the hearing and the arguments of counsel, the court makes the following findings of fact and conclusions of law pursuant to Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

### JURISDICTION

This court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) which this court may hear and determine.

### FACTS

When this chapter 11 case was commenced, American National

held a promissory note from the Debtors in the original amount of $306,000. This promissory note was secured by a deed of trust from the Debtors which encumbered real property owned by the Debtors consisting of three rental houses located in Greensboro, North Carolina and various vacant lots located in or near Greensboro ("Real Property Collateral"). Throughout this case, the Debtors contended that the Real Property Collateral had an aggregate fair market value of $473,822. American National contended that the "appraised value" of the rental houses was $158,000 and of the lots was $141,000 for total value of $299,000. During the plan proposal and confirmation process, American National was unwilling to accept the release of the Real Property Collateral in satisfaction of its indebtedness or the reamortization and payment schedule proposed by the Debtors. The amended plan that ultimately was confirmed provided the following treatment for American National's claim:

> Pursuant to the terms and conditions of this Plan, the Automatic Stay shall be lifted on the Real Property collateral as of the Effective Date of the Plan. American National shall liquidate the collateral and apply the proceeds against the claim. American National shall be entitled to one hundred and eighty (180) days from the Effective Date in which to amend their Proof of Claim, or file a new Proof of Claim, asserting any deficiency balance that may be owed. Any deficiency owed shall be paid pursuant to Class XIX General Unsecured below.

Debtors' amended plan was confirmed on December 6, 2012. Under the plan, the Effective Date of the Plan was sixty days after

the entry of the confirmation order or February 4, 2013, at which time the stay lifted as to the Real Property Collateral. American National thereafter initiated a foreclosure proceeding that led to a public sale on May 14, 2013. American National was the only bidder at the sale with a bid of $205,200 and the Real Property Collateral thereafter was deeded to American National. The final report and account filed in the foreclosure proceeding reflects that fees and expenses associated with the foreclosure totaled $4,275.12, leaving a net of $200,924.88 for application to the secured indebtedness.

On July 23, 2013, American National filed Claim Number 64 in the amount of $104,917.83, representing the deficiency amount claimed by American National after crediting the net proceeds realized from the foreclosure against the amount due under the promissory note from the Debtors.

ANALYSIS

1. The Objection to Claim

Pursuant to section 502(b)(1), it is a defense against a claim if the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . . ." The "basic federal rule" in bankruptcy is that state law governs the substance of claims and it generally is presumed that the enforceability of claims will be determined under state law. See

4 Collier on Bankruptcy, ¶ 502.03[b](16th ed. rev. 2013). The applicable law in this matter is North Carolina law, since the loan transaction occurred in North Carolina and gave rise to a deed of trust on real estate located in North Carolina which subsequently was foreclosed in a special proceeding that was conducted in North Carolina. The Debtors, therefore, are entitled to raise any defense that is available to them under North Carolina law.

The Debtors' objection to Claim Number 64 is based upon N.C. Gen. Stat. § 45-21.36. The Debtors argue that the amount bid by American National was substantially less than the "true value" of the Real Property Collateral and that as a result, under section 45-21.36, American National's claim is barred.

2. Applicable Law

N.C. Gen. Stat. § 45-21.36 is entitled "Right of mortgagor to prove in deficiency suits reasonable value of property by way of defense" and provides as follows:

> When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation whose property has been so purchased, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as a matter of defense and offset, but not by way

>of counterclaim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and upon such showing, to defeat or offset any deficiency judgment against him, either in whole or in part: Provided, this section shall not affect or defeat the negotiability of any note, bond or other obligation secured by such mortgage, deed of trust or other instrument: Provided, further, this section shall not apply to foreclosure sales made pursuant to an order or decree of court nor to any judgment sought or rendered in any foreclosure suit nor to any sale made and confirmed prior to April 18, 1933.

The undisputed facts establish the applicability of N.C. Gen. Stat. § 45-21.36 in this proceeding. American National is the holder of the promissory note secured by the deed of trust that was foreclosed and is the party who took title as the high bidder at the foreclosure sale. The foreclosure sale obviously did not yield the full amount of the indebtedness secured by the Real Property Collateral and the amount sought in American National's proof of claim is the deficiency remaining after the application of the proceeds from the foreclosure sale to the indebtedness secured by American National's deed of trust. The relief sought by American National is tantamount to a deficiency judgment. See Hyde v. Taylor, 320 S.E.2d 904, 906 (N.C. Ct. App. 1984)(deficiency judgment is an imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield the full amount of the debt). Finally, relief under the statute is available to "the mortgagor, trustor or other maker of

any such obligation whose property has been so purchased. . . ." Since the Debtors were the owners of the Real Property Collateral as well as the obligors under the promissory notes, they meet the foregoing requirement and are entitled to invoke section 45-21.36 as a defense against American National's deficiency claim. See NCNB Nat. Bank v. O'Neill, 401 S.E.2d 858 (N.C. Ct. App. 1991); Raleigh Fed. Sav. Bank v. Godwin, 394 S.E.2d 294 (N.C. Ct. App. 1990).

The question that remains is whether the Debtors are entitled to any relief under section 45-21.36. This, in turn, depends upon whether the $205,200 that was bid by American National was "substantially less" than the "true value" of the Real Property Collateral at the time of the sale.[1]

There is no statutory definition of "true value" in section 45-21.36 or elsewhere in Chapter 45 of the General Statutes of North Carolina.[2] Nor has any legislative history been found

---

[1] Under section 45-21.36 the "true value" of the property that was sold at the foreclosure sale is to be made as of "the time and place of sale." See First South Bank v. Biltmore Corp., 734 S.E.2d 138 (N.C. Ct. App. 2012); First Citizens Bank & Trust Co. v. Cannon, 530 S.E.2d 581 (N.C. Ct. App. 2000).

[2] The taxation chapter of the General Statutes in Section 105-283 contains the following definition of true value: "When used in this Subchapter, the words 'true value' shall be interpreted as meaning market value, that is, the price estimated in terms of money at which property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which property is adapted and for which it is capable of being used."

regarding section 45-21.36. And while there are a number of decisions by the North Carolina courts involving section 45-21.36, no decision has been found in which the court has undertaken to define the meaning of "true value." The North Carolina case law does, however, provide some guidance as to how section 45-21.36 should be interpreted and applied.

Early on, the Supreme Court of North Carolina upheld the constitutionality of an earlier version of section 45-21.36 against an argument that the statute impermissibly impaired the contracts of lenders in violation of the United States and North Carolina constitutions. Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 185 S.E. 482 (N.C. 1936). In doing so, the Court stated that the statute recognizes the validity of powers of sale contained in mortgages or deeds of trust, "but regulates the exercise of such powers by the application of well-settled principles of equity . . . [and] provides for judicial supervision of sales made and conducted by creditors whose debts are secured by mortgages or deeds of trust, and thereby provides protection for debtors whose property has been sold and purchased for a sum which was not a _fair value_ of the property at the time of the sale." (Emphasis supplied). Id. at 485. While the opinion makes it clear that the statute is intended for the protection of debtors and involves the application of principles of equity, the court did not attempt to define "true value" other than apparently equating that

term to "fair value" which, likewise, was not defined by the court.

There are other North Carolina decisions that have referred to "fair value" in discussing the application of section 45-21.36. E.g., Wachovia Realty Inv. v. Housing, Inc., 232 S.E.2d 667, 679 (N.C. 1977)("fair value, as of the date of the foreclosure sale, of the properties . . . is, therefore, a material fact with reference to the amount, if any, the plaintiff is entitled to recover")(Emphasis supplied); O'Neill, 401 S.E.2d at 859. In neither of these latter decisions did the court ascribe any meaning to either "true value" or "fair value."

There also is dicta in several North Carolina decisions involving section 45-21.36 in which "fair market value" is utilized in describing or summarizing the terms of section 45-21.36. Thus, in Raleigh Sav. Bank v. Godwin, 394 S.E.2d 294 (N.C. Ct. App. 1990), the court stated:

> Upon foreclosure under a deed of trust, where the mortgaged property is purchased by the mortgagee, the provisions of G.S. § 45-21.36 allow a mortgagor to show, as a defense to an action by the mortgagee for a deficiency, that the purchase price was less than the land's fair market value.

(Emphasis supplied). Id. at 296. Similarly, in First Citizens Bank & Trust Co. v. Martin, 261 S.E.2d 145 (N.C. Ct. App. 1979), the court, in describing the impact of section 45-21.36, stated that "[w]here the property was purchased by the mortgagee, the mortgagor was permitted to show, as a defense to an action by the

mortgagee for a deficiency, that the purchase price was less than land's <u>fair market value</u>." (Emphasis supplied). <u>Id.</u> at 148. The issue involved in both of these decisions was whether the defendants in the cases could invoke section 45-21.36 since the defendants were not the owners of the real property that was sold at foreclosure. Neither case involved an issue involving the meaning of "true value" and a determination of that issue was not required in deciding the cases. The references to "fair market value" thus is dicta and as such does not constitute binding North Carolina precedent regarding the meaning of "true value" as used in section 45-21.36.

In the absence of controlling North Carolina law on an issue dependent upon North Carolina law, the function of this court is to predict how the Supreme Court of North Carolina would decide the issue. <u>See</u> <u>McNair v. Lend Lease Trucks, Inc.</u>, 93 F.3d 325, 328 (4th Cir. 1996). This means that in the context of this proceeding, the court is to predict how the Supreme Court of North Carolina would interpret "true value" as used in section 45-21.36. The decision of the North Carolina Supreme Court in <u>North Carolina v. Webb</u>, 591 S.E.2d 505 (N.C. 2004), describes the manner in which the North Carolina Court might proceed in interpreting section 45-21.36. In that decision, the Court ruled that a plain meaning analysis should be employed first in construing a statute. In such an analysis, the Court further ruled that the plain meaning of

words ordinarily may be construed by reference to standard, nonlegal dictionaries but that "[w]here appropriate, including earlier in this opinion, this Court has consulted Black's Law Dictionary." Id. at 510-11. This court believes that the North Carolina Court would find it appropriate to consult Black's Law Dictionary in determining the meaning that should be given to the term "true value" as used in section 45-21.36. In defining "true value" Black's states: "See fair market value." Black's defines "fair market value" as "[t]he price that a seller is willing to accept and a buyer is will to pay on the open market and in an arm's length transaction" and further states that fair market value also is "termed . . . true value." Likewise, the definition of "fair value" states: "See fair market value." and "fair value" is included as one of the terms for "fair market value."

Considering these definitions and the dicta contained in the North Carolina decisions, as well as the language and intended purpose of section 45-21.36, the court concludes that the North Carolina Court would rule that the defense against deficiency judgments afforded by section 45-21.36 is available where the defendant proves that the amount bid was substantially less than the fair market value of the real property at the time of the foreclosure sale. This conclusion is consistent with the fact that the focus of section 45-21.36 is upon the "true value" of the property at the time of the sale and not upon the price that would

be produced at a foreclosure sale. In fact, the North Carolina Supreme Court has made it clear that the amount of the creditor's bid does not establish the value of the property for purposes of applying section 45-21.36. See Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 185 S.E. at 485, where the court stated that "the amount bid by the creditor at the sale, and applied by him as a payment on the debt, is not conclusive as to the value of the property."

The purpose of section 45-21.36 is to provide a mechanism for determining when a deficiency claim will be denied to a mortgagee who elects to foreclose pursuant to a power of sale and purchases at its own sale. The statute is intended to provide a means for protecting mortgagors and preventing unjust enrichment of mortgagees where sales are conducted without court supervision. Measuring whether or to what extent a deficiency judgment will be allowed based upon the fair market value of the property is consistent with the statute's requirement that the "true" value of the property be utilized as well as with the purpose of the statute. Moreover, fair market value is a known and accepted concept with which the courts and the public are familiar. Fair market value also is a concept that permits consideration of all relevant and admissible factors bearing upon the value of real property at the time and place of a foreclosure sale which is a critical element in the application of section 45-21.36.

The utilization of fair market value in applying section 45-21.36 also is in line with the RESTATEMENT (THIRD) OF PROPERTY which uses fair market value as the standard in determining when a deficiency claim is barred following a foreclosure. Section 8.4 of the RESTATEMENT is entitled "Foreclosure: Action for a Deficiency" and provides as follows:

> (a) If the foreclosure sale price is less than the unpaid balance of the mortgage obligation, an action may be brought to recover a deficiency judgment against any person who is personally liable on the mortgage obligation in accordance with the provisions of this section. (b) Subject to Subsections (c) and (d) of this section, the deficiency judgment is for the amount by which the mortgage obligation exceeds the foreclosure sale price. (c) Any person against whom such a recovery is sought may request in the proceeding in which the action for a deficiency is pending a determination of the <u>fair market value</u> of the real estate as of the date of the foreclosure sale. (d) If it is determinated that the <u>fair market value</u> is greater than the foreclosure sale price, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.

(Emphasis supplied).

### 3. The Testimony Regarding the Collateral

The Real Property Collateral that was sold at the foreclosure sale consisted of three rental houses and ten residential building lots. The three rental houses are located in Greensboro and consist of a three bedroom house located at 1310 Mayfair Avenue, a

- 12 -

three bedroom house located at 1312 Mayfair Avenue, and a four bedroom house located at 1423 East Washington Street. The house located at 1310 Mayfair Avenue currently is being rented for a monthly rental of $600, 1312 Mayfair Avenue is being rented for $650 per month, and 1423 East Washington Street is being rented for $800 per month. Eight of the ten lots are located in McLeansville, a small town located a few miles from Greensboro. These lots consist of 4700 Crossbend Road, 4702 Crossbend Road, 4706 Crossbend Road, 4710 Crossbend Road, 4694 Crossbend Road, 4696 Crossbend Road, 4700 Rear Crossbend Road (which adjoins the back of 4700 Crossbend and has the sanitation field for 4700 Crossbend located on it) and 4696 Rear Crossbend Road (which adjoins the back of 4696 Crossbend Road and has the sanitation field for 4696 Crossbend Road located on it). The other two lots are located in Greensboro at 3544 Vernon Drive and 3544 Rear Vernon Drive (located at the rear of 3544 Vernon Drive where the sanitation field for 3544 Vernon Drive is located). The three lots containing sanitation fields for other lots are not suitable for building because of their location and function as sanitation fields.

The male Debtor, Wayne L. Stutts, has spent the last 35 years in the business of buying, managing and selling single-family rental houses in Greensboro and the surrounding area. Mr. Stutts also is a licensed contractor and has built new rental houses and remodeled existing rental houses. He testified that over the last

35 years he has purchased and sold approximately 250 single family rental houses. According to Mr. Stutts, he keeps up with and is familiar with the value of rental houses in the Greensboro area, and is familiar with the three rental houses and lots that were sold at the foreclosure sale, having owned and managed them for several years. Mr. Stutts testified that he had an opinion regarding the value of the houses and lots and testified to a value of $452,800 which he expressed as a "true value" and at times as fair market value for the property. He identified Debtors' Exhibit 1 as setting forth a breakdown of his value for each of the houses and lots individually.[3] On cross examination, Mr. Stutts admitted that his values for the houses and lots were the same as the Guilford County tax appraisals that were done in 2004 and that real estate values had suffered as a result of the financial crisis in 2008. He testified, however, that the 2004 tax values were only a starting point for his evaluation and that he had formed his own opinion that the value of the properties at the time of the foreclosure sale were the figures that he gave in court. He also testified that a "rule of thumb" that can be used in valuing rental houses is that they have a value of 100 times the monthly rental which also supported his opinion of the value of the rental houses. According to Mr. Stutts, while there had been a drop in real

---

[3]Mr. Stutts valued the rental houses at $78,200, $78,800 and $89,700, respectively, and the lots at values ranging from $27,000 to $30,000.

property values in 2008, the value of rental property in Greensboro had rebounded and improved since then.

American National's evidence consisted primarily of the testimony of Robert Craig Patterson, a senior vice president of the Bank. Mr. Patterson testified that he was familiar with the Stutts account at American National and with the Bank's handling of the foreclosure conducted with respect to properties that secured the indebtedness owed by the Debtors. Mr. Patterson testified that the Bank had obtained appraisals of the Stutts properties in 2012 and in 2013. According to the Bank's evidence, no separate amount was included in the appraisals for the rear lots containing the sanitation fields (3544 Vernon rear, 4696 Crossbend rear and 4700 Crossbend rear) because they were not buildable lots. The remaining properties (the three rental houses and the seven buildable lots) were appraised at a market value of $299,000 in 2012 and a market value of $297,000 in 2013. According to Mr. Patterson, the amount of American National's bid of $205,200 was arrived at by including in the bid eighty-five percent of the 2013 appraised market value of the rental houses and fifty percent of the 2013 appraised market value of the buildable lots for a total bid of $205,200. According to Mr. Patterson, these reductions were based upon anticipated transaction and carrying costs related to the Bank's retention of the properties until they could be sold and anticipated costs that would be incurred when the properties were

sold. However, very little explanation was provided as to what was included in the transaction and holding costs or as to the basis for discounting the market value of the rental houses by fifteen percent and the market value of the lots by fifty percent based upon such anticipated costs.

### 4. Conclusion

As the parties seeking relief under section 45-21.36, the Debtors were required to "allege and show" that they are entitled to relief, i.e., that the bid of $205,200 was substantially less than the fair market value of the property. In deciding whether the Debtors have carried the burden of proof, the court should consider all of the evidence that was offered at the hearing. This involves consideration of the proponent's evidence as well as the evidence of the opposing party that is favorable to the proponent. Here, the evidence offered by the Bank establishes that the Debtors' objection should be sustained.

According to the Bank's evidence, a 2012 appraisal placed the fair market value of the Real Property Collateral at $299,000, while a 2013 appraisal obtained by the Bank placed the fair market value of the Real Property Collateral at $297,000. While the value that Mr. Stutts placed on the lots was overly optimistic, his testimony nonetheless was sufficient to corroborate the $297,000 fair market value relied upon by the Bank in formulating its bid.

The Bank's bid at the foreclosure sale was $205,200, which is

thirty-one percent less than the 2012 fair market value and thirty percent less than the 2013 fair market value. The North Carolina Court of Appeals has affirmed a lower court ruling that a bid that was twenty percent less than the appraised value of the property was substantially less than the true value of the foreclosed property. See Blue Ridge Savings Bank, Inc. v. Mitchell, 721 S.E.2d 322, 325 (N.C. Ct. App. 2012), citing First Citizens Bank & Trust Co. v. Cannon, 138 N.C. 153, 154-56 (N.C. Ct. App. 2000). This court is satisfied that a bid that is thirty percent less than the fair market value of the foreclosed property is substantially less than the "true value" of the property within the meaning of section 45-21.36. In reaching this conclusion, the court is cognizant of the testimony that the Bank reduced its bid based upon allowances for holding and transactional costs anticipated by the Bank. However, the Bank's evidence was insufficient to support a reduction of the bid amount below the Bank's own appraised value of the Real Property Collateral. The Bank failed to explain adequately what such costs included or how the amount of the costs, and the resulting reduction in the bid, were determined. Whether there are factors which, if supported by competent evidence, can provide a valid basis for bidding less than the fair market value of foreclosed property need not be addressed at this time, given the paucity of such evidence in this proceeding. Suffice it to say, no such evidence was adduced in this proceeding.

Because the Bank's bid was substantially less than the true value of the Real Property Collateral, the Debtors are entitled to relief under section 45-21.36. Upon such a showing, section 45-21.36 provides that a mortgagor is entitled "to defeat or offset any deficiency judgement . . . either in whole or in part." Under the facts presented in this proceeding, the relief available under section 45-21.36 is an offset and reduction in the amount of the deficiency claim. The amount of the offset available to the Debtors is $91,800, the difference between the true value of the property and the amount of the bid. Additionally, American National included in its amended claim post-petition interest and service charges of $27,867.40 which are not allowable.[4] The net result of these adjustments is that American National is left with no deficiency claim. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 3rd day of December, 2013.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[4] As an undersecured creditor, American National's claim is determined as of the petition date and may not include post-petition interest or post-petition service charges. See Ford Motor Co. v. Dobbins, 35 F.3d 860, 869 (4th Cir. 1994). See generally 4 Collier on Bankruptcy, ¶ 502.03 (16th ed. rev. 2013).

# Parties to be served

American National Bank & Trust Co.
c/o Martha R. Sacrinty, Esq.
Tuggle Duggins, P.A.
PO Box 2888
Greensboro, NC 27402


American National Bank & Trust Co.
PO Box 191
Danville, VA 24543-0191

Justin W. Kay
PO Box 3324
Greensboro, NC 27402